Robert T. Szyba
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018
Telephone: (212) 218-5500
rszyba@seyfarth.com

Joseph J. Orzano (pro hac vice pending)
SEYFARTH SHAW LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210

Attorneys for Defendant
PHARMACARE U.S., INC.

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA SUNDERLAND and BENJAMIN BINDER individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>PHARMACARE U.S., INC. and PHARMACARE LABORATORIES PTY LTD.,<br><br>      Defendants. | Case No. _____<br><br>Related Case No.: 3:23-cv-01318 (S.D. Cal.)<br><br>ORAL ARGUMENT REQUESTED |

## PHARMACARE U.S., INC.'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA AND MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................3

 A. The ClassAction.org Website. .............................................................. 3

 B. Season 4's Advertisements for Plaintiffs to Sue PharmaCare. ............................. 4

 C. The Subpoena. ................................................................................ 5

III.  LEGAL STANDARD .............................................................................................7

IV.   ARGUMENT ........................................................................................................8

 A. The Court has jurisdiction to enforce the subpoena................................. 8

 B. The Subpoena seeks relevant documents............................................. 9

 C. Season 4 lacks standing to assert attorney-client and work product objections. .. 11

 D. The Subpoena seeks non-privileged documents. .................................. 12

 E. Season 4's burden objections are conclusory and without merit......................... 16

 F. Season 4's additional objections are also conclusory and without merit............. 16

V.    CONCLUSION.....................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re: 3M Combat Arms Earplug Products Liability Litig. ("Top Class Actions"),*
2021 WL 952315 (N.D. Fl. March 12, 2021) ........................................................11, 12, 13, 15

*Aramark Management, LLC v. Borgquist,*
2020 WL 9217993 (C.D. Cal. Aug. 31, 2020).........................................................................17

*Bodner v. Oreck Direct, LLC,*
2007 WL 1223777 (N.D. Cal. April 25, 2007).........................................................................10

*Canca v. Wayfair LLC,*
Case No. 22-2518-GC-RLS, 2023 WL 7221148, at *3 (D.N.J. Nov. 2, 2023).........................6

*Cdk Glob. LLC v. Tulley Auto. Grp. Inc.,*
 Case No. 15-3103-KM, 18 WL 4259843, at *2 (D.N.J. June 28, 2018) .................................8

*Corbett, et al. v. PharmaCare U.S., Inc.,*
No. 21-cv-0137-JES-AHG............................................................................................4, 5, 9

*Deibler v. SanMedica Int'l, LLC,*
Case No. 19-20155-NLH-MJS, 2021 WL 6136090, at *3 (D.N.J. Dec. 29,
2021) ........................................................................................................................................8

*Fahs Rolston Paving Corp. v. Pennington Properties Dev. Corp., Inc.,*
Case No. 03–4593-MLC, 2006 WL 3827427, at *3 (D.N.J. Dec. 28, 2006) .........................12

*FMC Corp. v. Guthery,*
Case No. 07–5409-JAP, 2009 WL 485280, at *6 (D.N.J. Feb. 25, 2009)..............................13

*Ford Motor Co. v. Edgewood Properties, Inc.,*
Case No. 06–1278-GEB-ES, 2010 WL 3001211 (D.N.J. July 28, 2010)...............................16

*Hinsinger v. Conifer Insurance Co.,*
Case No. 20-14753-RK-RLS, 2024 WL 866529, at n.2 (D.N.J. Feb. 29, 2024)....................16

*Keeler v. Esurance Ins. Servs., Inc.,*
2020 WL 7239568 (W.D. Pa. Dec. 9, 2020).............................................................................8

*Lifescan, Inc. v. Smith,*
Case No. 19-8761-CCC-JSA, 2023 WL 7089665, at *2 (D.N.J. Oct. 25, 2023) ....................9

*MapleWood Partners, L.P. v. Indian Harbor Ins. Co.,*
295 F.R.D. 550 (S.D. Fla. 2013) ............................................................................................12

ii

*Morrison v. Phila. Hous. Auth.*,
    203 F.R.D. 195 (E.D. Pa. 2001) ........................................................................8

*Schmulovich v. 1161 Rt. 9 LLC*,
    Case No. 07–597-FLW, 07 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) .................8

*in re Sevier*,
    2022 WL 3923679 (D. Del. Aug. 31, 2022) ........................................................6

*SPV-LS, LLC v. Transamerica Life Ins. Co. (In re Rule 45 Subpoena Issued to JP*
    *Morgan Chase Bank, N.A.)*,
    319 F.R.D. 132 (S.D.N.Y. 2016) ........................................................................8

*State v. Davis*,
    116 N.J. 341 (1989) ...........................................................................................14

*State v. Kociolek*,
    23 N.J. 400 (1957) .............................................................................................14

*Stock v. Integrated Health Plan, Inc.*,
    241 F.R.D. 618 (S.D. Ill. 2007) ........................................................................10

*Sunderland et al. v. PharmaCare U.S., Inc., et al.*,
    No. 3:23-cv-01318 .............................................................1, 5, 6, 7, 9, 10, 11, 15

*U.S. v. Patej*,
    2002 WL 31689508 (E.D. Mich. Oct. 17, 2002) ................................................11

*U.S. v. Rivera*,
    1990 WL 139019 (S.D.N.Y. Sept. 19, 1990) .....................................................11

*United Jersey Bank v. Wolosoff*,
    483 A.2d 821 (App. Div. 1984) .........................................................................13

*Wyeth v. Abbott Laboratories*,
    Case No. 08-230- JAP, 2011 WL 2429318, at *8 (D.N.J. June 13, 2021) ...........16

*Xcentric Ventures, L.L.C. v. Borodkin*,
    934 F. Supp. 2d at 1146 ....................................................................................12

**Statutes**

N.J.S.A. § 2A:84A–20 ............................................................................................12

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ...........................................................................................8

Fed. R. Civ. P. 45 .............................................................................................1, 7, 8

Fed. R. Civ. P. 45(d)(2)(B) ................................................................................6

Fed. R. Civ. P. 45(d)(2)(B)(i) ............................................................................8

Rule 23 ...........................................................................................................2, 10

Rule 23(g) .........................................................................................................10

Rule 23(g)(1)(B) ...............................................................................................10

Rule 23(g)(1)(C) ...............................................................................................10

Rule 34 ................................................................................................................7

Pursuant to Federal Rule of Civil Procedure 45, PharmaCare U.S., Inc. ("PharmaCare") requests an order compelling Season 4, LLC ("Season 4") to produce documents and information requested in PharmaCare's subpoena *duces tecum* (the "Subpoena") served on Season 4, LLC ("Season 4") on January 9, 2024. (Ex. 1, Subpoena *Duces Tecum*, Ex. 2, Aff. Of Service).

## I.    INTRODUCTION

PharmaCare's motion to compel arises in connection with a consumer putative class action pending before the Honorable James E. Simmons, Jr. in the United States District Court for the Southern District of California, *Sunderland et al. v. PharmaCare U.S., Inc., et al.*, No. 3:23-cv-01318 ("Sunderland Litigation"). The Sunderland Litigation was filed on July 18, 2023 by the law firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), naming Linda Sunderland and Benjamin Binder as putative class representatives ("Plaintiffs"). For years, Season 4 has advertised for potential class action claimants to sue PharmaCare through its website *ClassAction.org* and by email newsletter. Plaintiffs engaged with the *ClassAction.org* website by reviewing and responding to those advertisements, and signing up for newsletters, which they have received by email for years. *As confirmed via Plaintiffs' deposition testimony under oath, all of those engagements occurred before Plaintiffs were contacted by Milberg in the latter half of 2023.*

The Subpoena seeks documents that are highly relevant to the claims and defenses in the Sunderland Litigation. PharmaCare requests ten categories of documents that generally include: documents and communications between Season 4 and potential claimants (including Plaintiffs), documents between Season 4 and the attorneys who used Season 4's advertising services (including Milberg), and documents related to the ownership of Season 4. Responsive documents will likely reflect the reasons potential claimants purchased the at-issue dietary supplements and whether those reasons align with the reasons alleged in the Complaint.

Responsive documents also relate to the advertising and recruitment of Plaintiffs, which is germane to the adequacy requirement under Rule 23.

Nevertheless, Season 4 has refused to produce any responsive documents other than "published" advertising that "expressly reference the legal claims at issue in the [Sunderland] Lawsuit." Season 4 failed to timely object to the Subpoena, and therefore waived all objections, which are meritless in any event. Season 4 principally relies on attorney-client privilege and work product objections, neither of which has merit—Season 4 lacks standing to assert those objections because, as admitted by Season 4 on its website, they are not attorneys and their communications have not created an attorney-client relationship. Indeed, despite efforts to obscure the details necessary to evaluate its claims of privilege and work-product protection, Season 4's "categorical privilege log" makes clear that none of the documents it withheld from production are attorney-client communications or attorney work product (e.g. documents between counsel and an independent third-party marketing and advertising business involving non-legal, commercial matters, unrelated to any legal advice or legal representation). In any event, a federal district court has already rejected the objections when raised by a Season 4 competitor in response to a virtually identical subpoena. Season 4's "categorical privilege log," also makes clear that it unreasonably and unilaterally narrowed the scope of the Subpoena, thereby hindering and obstructing PharmaCare's legitimate discovery rights in this matter. While Season 4 asserts a number of additional objections, including burden, claimant privacy, confidential business information, and discovery from absent class members, it cannot rely on conclusory and merit less objections to unilaterally withhold relevant, responsive documents without stating that such responsive material are being withheld on the basis of those objections.

Season 4 has no legitimate basis for its continued refusal to produce the documents requested in the Subpoena.  The Court should order Season 4 to comply.

## II.    BACKGROUND

### A.    The ClassAction.org Website.

Season 4 maintains a publicly-available website, *ClassAction.org*, where it advertises for potential claimants to join putative class action lawsuits.  *ClassAction.org* represents itself as "a group of online professionals who are committed to exposing corporate wrongdoing," providing "breaking news and shrewd opinion," as well as a "lawsuit list," which "covers active litigation and investigations . . . based on both intel we've gathered from the lawyers we work with and publicly available information."  (Ex. 3, "About Us").  The website allows users to submit inquiries or information to "sponsoring" law firms.  (Ex. 4, "Terms of Use").

Importantly, however, the website also repeatedly disclaims that these communications are in the course of an attorney-client relationship.  Users who submit information through a "Get in Touch" online form are presented with the hyperlinked text, "By submitting this form, I agree to the Terms, Disclaimer and Privacy Notice."  (Ex. 5, PLT000002).  The "Disclaimer" in turn provides:  the information provided by the site "**does not establish an attorney-client relationship between you and Season 4, LLC**," and that "[s]ubmitting a case evaluation or any type of response . . . will not create an attorney-client relationship."  (Ex. 6, "Disclaimer").  The Disclaimer further makes clear that "[a]ny communications that you have with lawyers, law firms, legal financial service providers or other legal service providers contacted through our service are not the responsibility of Season 4, LLC."  *Id.*  And the Disclaimer also suggests that users not rely on the website to secure sufficient legal advice: "We strongly suggest that you consult with your own attorney should you need legal advice[.]" *Id.*

The Terms of Use disclaim an attorney-client relationship as well.  It contains the bolded header, "**No Legal Advice or Attorney-Client Relationship**," and again (just as in the Disclaimer) provides that "[s]ubmitting a case evaluation or any type of response or other information through the Service or otherwise via the Site will not create an attorney-client relationship[.]" Ex. 4; see also *id.* ("[N]othing provided or contained in the Service or the Site is to be considered an offer to represent you in any manner."). The Terms also make clear that "Season 4 is not obligated to release any posted information, including contact names, and it is possible that no lawyer, law firm, legal financial service provider or other legal service provider will respond to your submissions to the Service." Ex. 4. Users are "encourage[d] . . . to also contact other counsel[,]" so as to avoid having claims barred by applicable statutes of limitations. *Id.*

Finally, the Terms specifically allow for the information submitted through the site to be disclosed if "ordered . . . by a court of law." *Id.*

### B.     Season 4's Advertisements for Plaintiffs to Sue PharmaCare.

Season 4 advertised for potential claimants to join two different lawsuits filed against PharmaCare between 2021 and 2023.  Both lawsuits relate to PharmaCare's sale of Sambucol brand black elderberry dietary supplements.[1]  **First**, in 2021, Season 4 advertised for potential claimants to file a lawsuit in the Southern District of California styled *Corbett, et al. v. PharmaCare U.S., Inc.*, No. 21-cv-0137-JES-AHG ("Corbett Litigation").  In the Corbett

---

[1] The Sambucol products include Black Elderberry Original Syrup, Black Elderberry Advanced Immune Syrup, Black Elderberry Sugar Free Syrup, Black Elderberry Syrup for Kids, Black Elderberry Gummies, Black Elderberry Gummies for Kids, Black Elderberry Advanced Immune Capsules, Black Elderberry Effervescent Tablets, Black Elderberry Chewable Tablets, Black Elderberry Pastilles (Throat Lozenges), Black Elderberry Daily Immune Drink Powder, and Black Elderberry Infant Drops (collectively, the "Products").

Litigation, the plaintiffs allege that PharmaCare deceived consumers into purchasing or paying more for the Products by misrepresenting that the Products are lawfully sold dietary supplements and can mitigate or prevent a disease.  (Ex. 7, "Corbett Litigation Second Amended Complaint").  In June 2023, Plaintiffs in Corbett sought leave to amend, were denied, and then within a month filed the Sunderland complaint asserting the claims they were denied leave to assert.  Declaration of Joseph Orzano, ¶10.  **Thereafter**, in 2023, Season 4 advertised for potential claimants to file the Sunderland Litigation.  In the Sunderland Litigation, the Plaintiffs allege that PharmaCare deceived consumers into purchasing Products by misrepresenting that they contain a unique and proprietary black elderberry extract that was developed by a virologist.  (Ex. 8, "Sunderland Litigation Complaint").

### C.    The Subpoena.

PharmaCare served the Subpoena in the Sunderland Litigation seeking in pertinent part: (1) documents related to any potential claimant[2]; (2) documents related to any analysis of any potential claimant or claim[3]; (3) documents related to the referral of any claimant to a lawyer; (4) documents related to marketing or advertising directed to claimants; (5) agreements between Season 4 and any lawyer or law firm related to the Sunderland Litigation; (6) communications between Season 4 and any lawyer or law firm related to any claimants or their claims; (7) documents regarding any financial interest in Season 4; (8) documents related to Season 4's

---

[2] "Claimant" is defined in the requests to mean "all Persons that have contacted YOU regarding potential claims against Defendant related to the PRODUCTS, including (a) Linda Sunderland; (b) Benjamin Binder; and (c) all other Persons that have asserted or may assert claims against Defendant related to the PRODUCTS."  (Ex. 1, "Subpoena").

[3] "Claim" is defined in the requests to mean "any claim(s) or cause(s) of action alleging any injury or harm caused by the PRODUCTS."  (Ex. 1, "Subpoena").

ownership; (9) any other documents related to the Products; and (10) any other documents related to the Sunderland Litigation. (Ex. 1, "Subpoena").

The Subpoena specified a compliance date of January 24, 2024. *Id.* On January 23, 2023, Season 4 emailed counsel for PharmaCare suggesting it was gathering documents to produce, but needed more time to finalize its production. Specifically, Season 4 stated "[w]e are in the process of gathering documents and preparing our response to the subpoena" and asked whether "it would be possible to extend the deadline 10 days so that we can put together our response." (Ex. 9, "M. Clemente Email Chain"). PharmaCare agreed to extend the deadline for Season 4 to respond to the subpoena and produce documents, to February 5, 2024. *Id.* Because Season 4 did not ask for an extension to object to the requests in the subpoena, any objections were waived.[4] On February 5, 2024, Season 4 failed to produce documents. Instead, Season 4 served objections, with an agreement to produce only "published" advertising that "expressly reference the legal claims at issue in the [Sunderland] Lawsuit." (Ex. 10, "Season 4 Response").

On February 19, 2024, Season 4 produced 16 pdfs. The pdfs include versions of the *ClassAction.org* website and a newsletter related to the Sunderland Litigation. PharmaCare conferred with Season 4 in writing and telephonically, but Season 4 has refused to produce any

---

[4] Any objection to producing documents as commanded in a subpoena must be served before the earlier of the time specified for compliance or 14 days after subpoena is served. Fed. R. Civ. P. 45(d)(2)(B). Here, Season 4 was served with the subpoena on January 9, 2024. (Ex. 2, Affidavit of Service), and 14 days after the service is January 23, 2024. The Subpoena called for compliance on January 25, 2024. (Ex. 1, Subpoena). Thus, Season 4 was required to serve any objections to the Subpoena no later than January 23, 2024. Season 4 did not serve any objections to the Subpoena until February 5, 2024. (Ex. 10, "Response to Subpoena"). As a result, all of Season 4's are waived. *See, e.g.*, *Canca v. Wayfair LLC*, Case No. 22-2518-GC-RLS, 2023 WL 7221148, at *3 (D.N.J. Nov. 2, 2023) (explaining that "[a] court may deem the failure to timely serve objections to a subpoena as a waiver of such objections") *citing in re Sevier*, 2022 WL 3923679, at *2 (D. Del. Aug. 31, 2022) (finding waiver of all objections to subpoena where party did not serve timely objections under Rule 45 (d)(2)(B)).

additional documents.  Season 4 maintains that all other responsive documents are protected

from disclosure as attorney-client communications or attorney work product.  At PharmaCare's

request—and almost a month later—Season 4 finally produced a "Categorical privilege log" on

March 15, 2024.  Rather than separately list each individual document withheld, Season 4's

privilege log groups these documents into broad and argumentative categories that omit the title,

author, recipient, date, or subject matter of any specific document.  Such categorical grouping

and lack of specificity deliberately obscures the details required to support Season 4's privilege

claims but nonetheless reveals that no basis exists to withhold the documents identified.  Indeed,

the privilege log instead demonstrates that Season 4 is baselessly withholding documents and

communications unrelated to any attorney-client relationship or the provision of any legal advice

or opinion to existing or potential clients.  (*Id.*)

Moreover, despite Plaintiffs in the Sunderland Litigation having testified they had

communicated with Season 4 prior to June 2023 (*Id.*), Season 4 also impermissibly and

unilaterally narrowed the temporal scope of the Subpoena.  Rather than encompass *all* relevant,

responsive documents, Season 4's privilege log limits its scope to only those documents or

communications created or exchanged during a 1 month period between June 2023 and July

2023. (*Id.*)  This narrowing of the scope not only suggests a significant limitation on the breadth

of information being made available, but also appears intended to hider or obstruct PharmaCare's

legitimate discovery rights in this matter, counter to the principles of fairness and transparency

that underpin the discovery process.

## III.   LEGAL STANDARD

A non-party witness is subject to the same scope of discovery under Rule 45 as a party is

under Rule 34.  *See* Fed. R. Civ. P. 45 (advisory committee's note to 1970 amendment). As such,

a party may seek discovery from any non-party of any non-privileged material "relevant to any

party's claim or defense." Fed. R. Civ. P. 26(b)(1); *Schmulovich v. 1161 Rt. 9 LLC*, Case No. 07–597-FLW, 07 WL 2362598, at *2 (D.N.J. Aug. 15, 2007). "Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage." *Cdk Glob. LLC v. Tulley Auto. Grp. Inc.*, Case No. 15-3103-KM, 18 WL 4259843, at *2 (D.N.J. June 28, 2018); *see also SPV-LS, LLC v. Transamerica Life Ins. Co. (In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.)*, 319 F.R.D. 132, 134 (S.D.N.Y. 2016) (compelling production of documents in response to a third party subpoena because they were, "at a minimum[] . . . plainly relevant to [a party's] affirmative defenses").

A party moving to compel discovery "bears the initial burden of proving the relevance of the requested information." *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, however, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Keeler v. Esurance Ins. Servs., Inc.*, 2020 WL 7239568, at *2 (W.D. Pa. Dec. 9, 2020) (citation and internal quotation marks omitted).

## IV.    ARGUMENT

### A.    The Court has jurisdiction to enforce the subpoena.

As an initial matter, Rule 45 requires that the party seeking compliance with its subpoena file such motions to compel in "the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Deibler v. SanMedica Int'l, LLC*, Case No. 19-20155-NLH-MJS, 2021 WL 6136090, at *3 (D.N.J. Dec. 29, 2021). Because the Subpoena requires compliance within the District of New Jersey (see Ex. 1 (designating the place of compliance for the Subpoena as "Nationwide Legal c/o Ai Legal Services, 301 Rt 17 North, Suite 800, Rutherford, NJ 07070,"

which is within 100 miles of Season 4's principal place of business)), the Court has jurisdiction to enforce the Subpoena.

      **B.**      **The Subpoena seeks relevant documents.**

Relevance is "liberally construed to provide for a broad vista of discovery encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" *Lifescan, Inc. v. Smith*, Case No. 19-8761-CCC-JSA, 2023 WL 7089665, at *2 (D.N.J. Oct. 25, 2023). Here, PharmaCare seeks clearly relevant documents and Season 4's conclusory objections provide no basis to withhold responsive documents.

Generally, the Subpoena requests can be grouped into three overarching categories: (1) documents or communications between Season 4 and potential claimants; (2) documents or communications between Season 4 and Milberg; and (3) documents or communications regarding the ownership of Season 4.

First, documents and communications between the Plaintiffs in the Sunderland Litigation (as well as absent putative class members) and Season 4 are clearly relevant to the claims pled in the Complaint.[5] Such documents are likely to contain information about the reasons consumers purchased the Products and whether those reasons align with the allegations in the Complaint. Communications between the plaintiffs in the Corbett Litigation (as well as absent putative class members in that case) and Season 4 are likewise relevant for the same reasons; especially where—as here—the Sunderland Plaintiffs may have been solicited for the Corbett Litigation, but named in the Sunderland Litigation.

---

[5] Request 1 (documents relating to any claimant); Request 2 (documents relating to marketing or advertising directed to actual or potential claimants).

Second, documents and communications between Season 4 and Milberg are also clearly relevant.[6]  Such documents may also include analysis of potential claimants or their claims, including the reasons consumers purchase the Products and whether those reasons align with the allegations in the Complaint.  Further, Milberg's advertisements to, and recruitment of, potential clients are relevant to the Rule 23 adequacy requirement.  Rule 23(g)(1)(B) (court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class."); Rule 23(g)(1)(C) (court "may order potential class counsel to provide information on any subject pertinent to the appointment. . ."); *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 623 (S.D. Ill. 2007) ("(C)ourts are allotted sufficient discretion to allow defendants discovery on any consideration, mandatory or optional, pertinent to an inquiry made under Rule 23(g)."). Indeed, a California Federal Court has denied class certification under circumstances where putative class counsel recruited a straw plaintiff (like Milberg did here). *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *2-3 (N.D. Cal. April 25, 2007).

Third, documents related to the ownership of Season 4 are likewise relevant because they also relate to Milberg's advertisement to, and recruitment of, potential clients and is therefore is germane to Rule 23's adequacy requirement.[7]

---

[6] Request 1 (documents relating to any claimant); Request 2 (documents relating to any analysis regarding any claimant or any of their claims); Request 3 (all documents relating to any referral of any claimant to a lawyer); Request 4 (documents relating to marketing or advertising directed to actual or potential claimants, or the solicitation of claimants to join the Sunderland Litigation); Request 5 (documents relating to agreements with Milberg or other lawyers relating to the Sunderland Litigation); Request 6 (communications between Season 4 and Milberg or any other law firm or lawyers).

[7] Request 7 (documents regarding any financial interest that any other person, including Milberg has in Season 4); Request 8 (documents relating to Season 4's ownership by any other person).

Last, documents related to the Products or the Sunderland Litigation not otherwise produced are directed to any other relevant documents not produced in response to other requests.[8]  The requests are necessarily limited in scope to relevant issues.  And, given Season 4's role as an advertiser for potential claimants to sue PharmaCare, it is hard to conceive of what, if any documents, Season 4 could possibly have related to the Products or the Sunderland Litigation that are *not* relevant.  Season 4 has not identified any during meet-and-confer efforts.

C.    **Season 4 lacks standing to assert attorney-client and work product objections.**

Season 4 does not have standing to assert attorney-client privilege objections to the Subpoena because it does not have an attorney-client relationship with the potential claimants who submit information to *ClassAction.org*.  Indeed, a Federal Court rejected Season 4's competitor's privilege objections to document requests that are nearly identical those served here.  *See In re: 3M Combat Arms Earplug Products Liability Litig. ("Top Class Actions")*, 2021 WL 952315, at *4 (N.D. Fl. March 12, 2021) (recognizing that attorney-client privilege is "typically raised by the party or the party's attorney"); *see also U.S. v. Patej*, 2002 WL 31689508, at *4 (E.D. Mich. Oct. 17, 2002) (finding defendant "lack[ed] standing to assert the attorney-client privilege as to the letter" from another individual to his attorney because "[o]nly a party to the attorney-client relationship may assert the privilege."); *see also U.S. v. Rivera*, 1990 WL 139019, at *1 (S.D.N.Y. Sept. 19, 1990) ("The Court further recognizes that any attorney-client privilege is held by the client, not Mr. Salzman, and therefore, he even lacks standing to quash the subpoena on this ground.").  Plainly, business (Milberg) to business (Season 4)

---

[8] Request 9 (documents related to the Products not otherwise produced); and Request 10 (documents related to the Sunderland Litigation not otherwise produced),

discussions of how to advertise Milberg's services (as reflected in the privilege log at Ex. 13) are not privileged; Season 4 does not provide legal advice and is not Milberg's client.

Likewise, Season 4 does not have not have standing to assert work product immunity because it is neither an attorney nor a client.  *See, e.g.*, *Xcentric Ventures, L.L.C. v. Borodkin*, 934 F. Supp. 2d at 1146 ("It is the attorney, though, who has standing to assert the work-product privilege."); *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 619 (S.D. Fla. 2013) ("Immunity from production of work-product materials may be asserted by either the attorney or the client, and each can waive that immunity, but only as to herself, as both the attorney and the client benefit from the privilege.").

In sum, as a third party, Season 4 does not have standing to assert the attorney-client or work product privileges on behalf of the potential claimants or its law firm clients.

### D.    The Subpoena seeks non-privileged documents.

The Court should reject Season 4's attorney-client and work product objections, as such objections have been rejected when asserted by an Season 4 competitor in response to virtually identical requests.  *See Top Class Actions*, 2021 WL 952315, at *4–6.

In order to show that PharmaCare's requests seek privileged information, Season 4 would have to show, as a threshold matter, that the communications were (1) "between a lawyer and his [or her] client in the course of" an attorney-client relationship, and (2) made "in professional confidence."  *Fahs Rolston Paving Corp. v. Pennington Properties Dev. Corp., Inc.*, Case No. 03–4593-MLC, 2006 WL 3827427, at *3 (D.N.J. Dec. 28, 2006) (quoting N.J.S.A. § 2A:84A–20).  Critically, New Jersey courts have recognized that the first element is essential: they have "repeatedly recognized that the privilege is limited to communications made to the attorney in his professional capacity," and so applies only "within the context of the strict relation of

attorney and client." *United Jersey Bank v. Wolosoff*, 483 A.2d 821, 826 (App. Div. 1984). (quotations omitted).

Season 4 cannot show that information submitted to *ClassAction.org* is somehow within the "strict relation of attorney and client" here.  Instead, and much like in *Top Class Actions*, the various terms and disclaimers of the website thoroughly reject a key element of the privilege. Even though the terms of each website are somewhat different (in *Top Class Actions*, for example, the Court correctly focused on that website's extensive disclaimers of confidentiality, another requirement of the privilege, *see* 2021 WL 952315, at *4–6), the result is the same. Season 4 cannot show that users of the website acted "in the course of" an attorney-client relationship where, to the contrary, the website instead informed users that "[s]ubmitting a case evaluation or any type of response . . . will not create an attorney-client relationship[,]" (Ex. 6, "Disclaimer"), and included bold headers stating "No Legal Advice or Attorney-Client Relationship." (Ex. 4,  "Terms of Use"). Even if it could be true that users of the website thought that their submissions would be somehow "confidential" as that word is used in common parlance, that alone cannot establish a privilege, where those "confidential" communications were made only to the website, not to any attorneys representing them.  *Wolosoff*, 483 A.2d at 826.

Nor could some attorney-client relationship somehow be implied: like most jurisdictions, New Jersey only implies such a relationship where belief in it is reasonable.  *FMC Corp. v. Guthery*, Case No. 07–5409-JAP, 2009 WL 485280, at *6 (D.N.J. Feb. 25, 2009) ("[E]ven if the Court were to assume that Connolly Bove received confidential information from Guthery, the Court would nonetheless still find that there existed no implied attorney client relationship because it was not reasonable for Guthery to believe that DiGiovanni was acting as his

attorney.").  The website's various disclaimers thoroughly belie the reasonableness of that hypothetical belief here.

Season 4 objects that the communications could be privileged because it was somehow acting as Milberg's "agent," but this view stretches common sense, the law, and the record. *ClassAction.org* users may not even be aware of Milberg—there is nothing in the record showing that when a user submits a inquiry through the website, they are guaranteed to contemplate anything about Milberg or any attorney working there.  Just the opposite it true—Season 4's Terms make clear that "it is possible that no lawyer, law firm, legal financial service provider or other legal service provider will respond to your submissions to the Service."  Ex. 4. In other words, Season 4 is arguing that Milberg is in an attorney-client relationship with *ClassAction.org*'s users even though many or all of those users may well have no clue who Milberg is, while also telling its users that lawyers may not be involved in their submission. That makes any claim by Season 4 that the communications were "in the course" of the necessary relationship dubious on its face. Season 4 cannot carry its burden of proving the privilege, where it cannot show that users necessarily even knew of Milberg.

While it may be true that New Jersey law extends the privilege to "agents" including criminal investigators (*State v. Davis*, 116 N.J. 341, 361 (1989), that agency relationship must be "necessary" to the representation.  *Davis*, 561 A.2d at 1092. That "necessity" is lacking in this case; there is no reason why, for example, the website could not simply direct users to Milberg's own website, or provide them with directions on how to contact Milberg directly.  The idea that Season 4 is "necessary" to the attorney client relationship is thus far afield of applicable case law.  New Jersey cases speak to clearly critical assistants to attorneys, *e.g.*, "a scientific expert retained to aid in the presentation of the defense," *State v. Kociolek*, 23 N.J. 400, 413 (1957), not

an internet fill-in-the-box form.  Worse, there is also no evidence showing that Season 4 was Milberg's "agent" in the first place.

Season 4's work-product objections fail for the same reasons that the same arguments failed in *Top Class Actions*.  None of Season 4's communications could fall within the work-product protection, where Season 4's work r*elates to advertising and marketing, not the legal advice or analysis of a lawyer.  Top Class Actions*, 2021 WL 952315, at *6.  Nor has Season 4 ever even produced a privilege log showing how any withheld documents could actually relate to "legal strategy" rather than mere business services; Season 4's privilege log shows precisely the opposite.  *Id.*; see also, Ex. 13.  Absent that basic proof, Season 4 does not carry its burden of proving that any work-product protection applies here.

Last, both Plaintiffs in the Sunderland Litigation testified at their depositions that they communicated with ClassAction.org by email long before Milberg ever contacted them.  (Ex. 11, "Binder Transcript"; Ex. 12 "Sunderland Transcript").  Indeed, plaintiff Binder testified that he visited the *ClassAction.org* website and signed up for its email newsletter in 2015, eight years before the Sunderland Litigation was filed.  (Ex. 11, "Binder Transcript" at 42:21-43:12, 44:21-45:24).  He subsequently received newsletters from *ClassAction.org* every week or two but deleted all of them but the most recent one he received.  (*Id.*, 74:21-75:12; 89:1-90:2).  Likewise, plaintiff Sunderland testified that she signed up for *ClassAction.org's* newsletter two years ago.  (Ex. 12, "Sunderland Transcript" at 88:9-92:12).  And she received a phone call from Milberg "many months" after submitting a form through the *ClassAction.org* website.  *Id.* at 96:1-96:17.  Therefore, there are many communications between Season 4 and the Sunderland Plaintiffs that cannot possibly be attorney-client communications.  Presumably in an attempt to obscure those

communications from 2015 through mid-2023, Season 4 unilaterally limited it privilege log to a less than 1-month period in June 2023. (Ex. 13).

**E.    Season 4's burden objections are conclusory and without merit.**

Absent a valid showing of privilege, Season 4 cannot show that there is otherwise any burden of the kind that could justify withholding responsive documents. "[B]are allegations of burden . . . will not suffice" to quash a subpoena, *Wyeth v. Abbott Laboratories,* Case No. 08-230- JAP, 2011 WL 2429318, at *8 (D.N.J. June 13, 2021); courts instead require "particular and specific demonstration of fact[s]" supporting claimed burden, *Ford Motor Co. v. Edgewood Properties, Inc.*, Case No. 06–1278-GEB-ES, 2010 WL 3001211 (D.N.J. July 28, 2010); *see also Hinsinger v. Conifer Insurance Co.*, Case No. 20-14753-RK-RLS, 2024 WL 866529, at n.2 (D.N.J. Feb. 29, 2024) ("Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" do not "establish[] any undue burden . . . ." (quotations omitted)).

Here, Season 4 comes nowhere close to the required showing. Instead, Season 4 makes the generic objection that PharmaCare should seek information from the parties themselves. Even that argument is wholly unsupported. Season 4 does not show (nor could it show) that the various submitters to its website have even retained whatever submission they provided, nor is it likely that they did so. Nor would the various users of *ClassAction.org* necessarily have access to analysis of claims or any other requested documents in Season 4's possession. Lacking any proof on this score, or any proof on how Season 4 faces any "burden" to begin with, Season 4's burden objections are no basis to avoid compliance with the Subpoena.

**F.    Season 4's additional objections are also conclusory and without merit.**

Season 4's response includes numerous additional conclusory objections, all of which are baseless.

First, Season 4 objects to each and every request on the ground that the requests seek confidential business information. Season 4 has not substantiated its claim that any, much less all, responsive documents seek confidential business information. In any event, Season 4 has not set forth why a protective order would not protect its purported commercial interests adequately. *Aramark Management, LLC v. Borgquist*, 2020 WL 9217993, at *2 (C.D. Cal. Aug. 31, 2020) (overruling objection to request for production on basis of confidential business information because "[t]here is a stipulated protective order with procedures for safeguarding confidential and proprietary business information against misuse.").

Second, Season 4 objects to several requests on the basis that they seek discovery from absent class members. The requests seek discovery from Season 4, not absent class members.

Third, Season 4 objects to several requests on the basis that they invade claimants' reasonable expectation of privacy. Season 4 cites no law to support a privacy right in information submitted to a company like Season 4, and any such expectation of privacy would be inconsistent with Season 4 own website terms. (Ex. 4, "Terms of Use" (allowing that the information submitted through the site may be disclosed if "ordered . . . by a court of law.").

## V. CONCLUSION

PharmaCare respectfully requests that the Court order Season 4 to comply with the Subpoena, and produce all responsive documents.

Dated: March 21, 2024

**SEYFARTH SHAW LLP**

_____/s/ Robert T. Szyba_____
Attorneys for Defendant
PharmaCare U.S., Inc.

17