UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PHARMCARE U.S., INC.,**<br><br>Movant,<br><br>**v.**<br><br>**SEASON 4, LLC,**<br><br>Respondent. | Case No. 3:24-cv-04074-GC-JBD<br><br><br>Related Case No. 3:23-cv-1318 (S.D. Cal.) |

## NON-PARTY SEASON 4, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO MOVANT'S MOTION TO COMPEL

# **TABLE OF CONTENTS**

I.    Introduction ................................................................................1

II.   Factual Background ....................................................................3

      A.    The Underlying Action ...................................................3

      B.    Background On Season 4, LLC ......................................3

      C.    Defendant's Subpoena And Season 4's Timely Objections ................6

III.  Legal Standard ...........................................................................9

IV.   Argument ..................................................................................10

      A.    The Motion Should Be Denied Because It Seeks Information Protected By The Attorney Client Privilege .......................................10

            1.    California Law Governs Determinations Of Privilege .............11

            2.    The Attorney-Client Privilege Applies To Communications Between Plaintiffs' Counsel, Counsel's Agents, And The Prospective Clients ................13

                  a.    The Attorney Client Privilege Applies To Communications With Prospective Clients And An Attorney's Agent ........................14

                  b.    Season 4 Was Acting As Milberg's Agent And Was Reasonably Necessary For Privileged Communications 16

                  c.    The Communications Were Intended To Be Confidential And Remained Confidential ...........................................18

                  d.    Season 4 Has Standing To Assert Privilege ..................22

      B.    The Motion To Compel Must Be Denied Because The Subpoena Targets Information Protected By The Work Product Doctrine .........23

      C.    The Motion to Compel Should Be Denied Because Disclosure Of The Prospective Clients' Identities Would Invade Their Reasonable Expectation Of Privacy ........................................28

      D.    The Motion Should Be Denied Because the Subpoena Seeks Disclosure of Season 4's Confidential Commercial Information .......30

i

E.  The Subpoena is Overbroad, Unduly Burdensome, And Not Proportional to the Needs of the Case ....................................................31

F.  Season 4 Did Not "Waive" Any Objection By Serving Its Response on the Date PharmaCare Expressly Upon. ..........................................37

G.  This Court Should Transfer The Motion To The District Court For The Southern District Of California Under Fed. R. Civ. P. 45(f) .......40

V.  Conclusion .................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re: 3M Combat Arms Earplug Products Liability Litig.* (*"Top Class Actions"*),
    2021 WL 952315 (N.D. Fl. March 12, 2021)....................................................21

*Allen v. Banner Life Ins. Co.*,
    340 F.R.D. 232 (D.N.J. 2022)..............................................................................11

*In re Allergan Generic Drug Pricing Sec. Litig.*,
    2021 WL 236594 (D.N.J. Jan. 25, 2021)............................................................33

*Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*,
    57 N.E.3d 30 (N.Y. 2016)...................................................................................15

*Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
    410 F.3d 1104 (9th Cir. 2005) ....................................................................*passim*

*Berger Montague et al. v. Robinhood Financial, LLC*,
    1:23-mc-00075-JPC (S.D.N.Y.) ................................................................*passim*

*Bhatt v. Lalit Patel Physician P.C.*,
    2020 WL 13048694 (E.D.N.Y. Oct. 19, 2020) ..................................................28

*Bogard Constr., Inc. v. Oil Price Info. Serv., LLC*,
    604 F. Supp. 3d 895 (N.D. Cal. 2022)................................................................11

*Bronsink v. Allied Prop. & Cas. Ins.*,
    2010 WL 786016 (W.D. Wash. Mar. 4, 2010)...................................................22

*Bruno v. Quten Rsch. Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011)........................................................................31

*Canca v. Wayfair LLC*,
    2023 WL 7221148 (D.N.J. Nov. 2, 2023) ..........................................................39

*Carroll v. Comm'n on Tchr. Credentialing*,
    270 Cal. Rptr. 3d 448 (Ct. App. 2020) ...............................................................12

*Charles v. Quality Carriers, Inc.*,
    2010 WL 396356 (S.D. Ind. Jan. 28, 2010)........................................................35

*Coe v. Cross-Lines Ret. Ctr., Inc.*,
    2022 WL 17338289 (D. Kan. Nov. 30, 2022)...................................................21

*Columbus Life Ins. Co. v. Wilmington Tr., N.A.*,
    344 F.R.D. 207 (D.N.J. 2023)...........................................................................12

*Conde v. Sensa*,
    2018 WL 4297056 (S.D. Cal. Sept. 10, 2018)...................................................32

*Conforti & Eisele, Inc. v. Div. of Bldg. & Const., Dep't of Treasury*,
    405 A.2d 487 (N.J. Super. Ct. Law. Div. 1979) ...............................................16

*In re Copper Mkt. Antitrust Litig.*,
    200 F.R.D. 213 (S.D.N.Y. 2001) ......................................................................22

*Corbett, et al. v. PharmaCare U.S., Inc.*,
    No. 21-cv-0137-JES-AHG................................................................................33

*Costco Wholesale Corp. v. Superior Ct.*,
    219 P.3d 736 (Cal. 2009) .....................................................................13, 14, 22

*Curtiss-Wright Corp. v. Rodney Hunt Co.*,
    1 F. Supp. 3d 277 (D.N.J. 2014) ................................................................11, 12

*In re Daimler Truck N. Am., LLC*,
    2023 WL 2456069 (D. Del. Mar. 10, 2023) .....................................................40

*De La O v. Arnold-Williams*,
    2007 WL 9717727 (E.D. Wash. Mar. 8, 2007) .................................................20

*Don v. Unum Life Ins. Co. of Am.*,
    2014 WL 12603207 (C.D. Cal. Nov. 4, 2014) .......................................20, 25, 26

*DP Pham, LLC v. Cheadle*,
    200 Cal. Rptr. 3d 937 (Ct. App. 2016) .............................................................12

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,
    U.A.*,
    657 F.2d 890 (7th Cir. 1981) ............................................................................34

*Rouson ex rel. Est. of Rouson v. Eicoff*,
2006 WL 2927161 (E.D.N.Y. Oct. 11, 2006) .....................................................38

*In re EthiCare Advisors, Inc.*,
2020 WL 4670914 (D.N.J. Aug. 12, 2020) ........................................................10

*United States ex rel. Everest Principals, LLC v. Abbott Lab'ys*,
2023 WL 8040762 (S.D. Cal. Nov. 20, 2023)...............................................24, 27

*Farzan v. Wells Fargo Bank*,
2012 WL 6763570 (S.D.N.Y. Dec. 28, 2012) ...................................................16

*Ferruza v. MTI Tech.*,
2002 WL 32344347 (C.D. Cal. June 13, 2002)..................................................26

*In re Fosamax Prod. Liab. Litig.*,
2009 WL 2395899 (S.D.N.Y. Aug. 4, 2009).......................................................35

*In re Grand Jury*,
23 F.4th 1088 (9th Cir. 2021) .............................................................................23

*In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*,
357 F.3d 900 (9th Cir. 2004) ..............................................................................24

*Gunaratna v. Dennis Gross Cosmetology LLC*,
2023 WL 5505052 (C.D. Cal. Apr. 4, 2023) ......................................................32

*H.W. Carter & Sons, Inc. v. William Carter Co.*,
1995 WL 301351 (S.D.N.Y. May 16, 1995) ......................................................16

*Hall v. Marriott Int'l Inc.*,
2021 WL 3129598 (N.D. Cal. July 23, 2021) ....................................................40

*Herbert v. Haytaian*,
678 A.2d 1183 (N.J. Super. Ct. App. Div. 1996) ...............................................15

*Hickman v. Taylor*,
329 U.S. 495 (1947)............................................................................................24

*Horon Holding Corp. v. McKenzie*,
775 A.2d 111 (App. Div. 2001) ..........................................................................12

*HP Tuners, LLC v. Sykes-Bonnett*,
   2018 WL 10398216 (W.D. Wash. Sept. 12, 2018) .............................................30

*Ins. Co. of N. Am. v. Superior Ct.*,
   166 Cal. Rptr. 880 (Ct. App. 1980) ....................................................................15

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*,
   123 F. Supp. 3d 1215 (N.D. Cal. 2015) ................................................................9

*Jordan v. Comm'r, Mississippi Dep't of Corr.*,
   947 F.3d 1322 (11th Cir. 2020) .........................................................................28

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
   2019 WL 3069009 (C.D. Cal. Apr. 29, 2019) .....................................................38

*Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*,
   2020 WL 13077200 (E.D.N.Y. June 5, 2020) .....................................................26

*Korotki v. Cooper Levenson, Apr., Niedelman & Wagenheim, P.A.*,
   2022 WL 2191519 (D.N.J. June 17, 2022) ...........................................................9

*Meoli v. Am. Med. Serv. of San Diego*,
   287 B.R. 808 (S.D. Cal. 2003) ...........................................................................23

*In re Morning Song Bird Food Litig.*,
   2015 WL 12791473 (S.D. Cal. July 17, 2015) ....................................................15

*Nguyen v. Lotus by Johnny Dung Inc.*,
   2019 WL 3064479 (C.D. Cal. June 5, 2019) .......................................................34

*Nw. Mem'l Hosp. v. Ashcroft*,
   362 F.3d 923 (7th Cir. 2004) .............................................................................28

*On the House Syndication, Inc. v. Fed. Exp. Corp.*,
   203 F.R.D. 452 (S.D. Cal. 2001) .......................................................................32

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
   647 N.E.2d 741 (N.Y. 1995) ..............................................................................32

*Peninsula Pathology Assocs. v. Am. Int'l Indus.*,
   2022 WL 19574484 (E.D. Va. Dec. 23, 2022), aff'd, 2023 WL
   6192772 (E.D. Va. Aug. 14, 2023) .....................................................................35

vi

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) ............................................................................34

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012)...........................................................................31

*Rosso, Johnson, Rosso & Ebersold v. Superior Ct.*,
    191 Cal. App. 3d 1514 (Ct. App. 1987).................................................................20

*S. California Hous. Rts. Ctr. v. K3 Holdings, LLC*,
    2022 WL 17333390 (C.D. Cal. Oct. 18, 2022) ....................................................28

*Seebeck v. Gen. Motors Corp.*,
    1996 WL 742914 (N.D. Ga. May 17, 1996)..........................................................26

*Shaw Grp., Inc. v. Zurich Am. Ins. Co.*,
    2014 WL 1783955 (M.D. La. May 5, 2014) ..........................................37, 38, 39

*Smith-Brown v. Ulta Beauty, Inc.*,
    2019 WL 2644243 (N.D. Ill. June 27, 2019).........................................................26

*Soltani-Rastegar v. Superior Ct.*,
    256 Cal. Rptr. 255 (Ct. App. 1989) ......................................................................17

*SPH Am., LLC v. AT&T Mobility, L.L.C.*,
    2016 WL 11783677 (S.D. Cal. Oct. 27, 2016) .....................................................33

*State Farm Fire & Cas. Co. v. Superior Ct.*,
    62 Cal. Rptr. 2d 834 (Ct. App. 1997) ...................................................................15

*State v. Blacknall*,
    760 A.2d 1151 (N.J. Super. Ct. Law. Div. 2000) .................................................16

*Steele v. CVS Pharmacy, Inc.*,
    2016 WL 1659317 (S.D.N.Y. Apr. 18, 2016) ......................................................26

*Streichert v. Town of Chester, New York*,
    2021 WL 735475 (S.D.N.Y. Feb. 25, 2021) .........................................................14

*Sunderland et al. v. PharmaCare U.S., Inc. et al.*,
    No 3:23-cv-1318-JES-AHG ....................................................................................3

*Tartaglia v. Paul Revere Life Ins. Co.*,
   948 F. Supp. 325 (S.D.N.Y. 1996) ...................................................................11

*United States v. Kovel*,
   296 F.2d 918 (2d Cir. 1961) .............................................................................23

*United States v. Nobles*,
   422 U.S. 225 (1975)...........................................................................................24

*United States v. Vepuri*,
   2022 WL 3648184 (E.D. Pa. Aug. 24, 2022) ...................................................26

*Vodak v. City of Chicago*,
   2004 WL 783051 (N.D. Ill. Jan. 16, 2004)........................................................21

*Walker v. Alta Colleges, Inc.*,
   2010 WL 2710769 (W.D. Tex. July 6, 2010).....................................................35

*Wi-Lan Inc. v. Rsch. in Motion Corp.*,
   2010 WL 2998850 (S.D. Cal. July 28, 2010) .....................................................9

*In re Worlds of Wonder Sec. Litig.*,
   1992 WL 330411 (N.D. Cal. July 9, 1992) .......................................................33

**Statutes**

Cal. Evid. Code § 952 .........................................................................................17

N.J. Stat. § 2A:84A-20(3) ...................................................................................15

**Other Authorities**

Cal. Const. Art. I, § 1 ..........................................................................................28

Cal. RPC 1.18(b).................................................................................................29

Fed. R. Civ. P. 26 ................................................................................................24

Fed. R. Civ. P. 45 ................................................................................................40

Restatement (Third) of the Law Governing Lawyers § 70 (cmt. g)
   (2000)..................................................................................................................16

Restatement (Third) of the Law Governing Lawyers § 86 cmt. c (2000) ...................................................................................................23

Non-party Season 4, LLC ("Season 4") submits this memorandum of law in opposition to PharmaCare U.S., Inc.'s ("PharmaCare") Motion to Compel Compliance (the "Motion"), which seeks an order requiring Season 4 to produce documents responsive to its facially deficient third party subpoena.

## I.    INTRODUCTION

As discussed in Section IV.G., *infra*, Season 4 expressly consents to the transfer of this motion to the issuing court in the underlying action.  Thus, transfer is appropriate on these under Fed. R. Civ. 45(f).

After transfer to the issuing Court, the Motion should be denied for numerous of reasons.  On its face, the Subpoena improperly targets communications and documents protected from disclosure by the attorney-client privilege, work product doctrine, and other related privacy considerations. That is, the Subpoena seeks: (1) confidential communications from prospective clients of the Milberg Coleman Bryson Phillps Grossman, PLLC ("Milberg") law firm, who submitted confidential information through the ClassAction.org website operated by Season 4 in order to have the law firm evaluate their claims and pursue claims against PharmaCare; (2) confidential communications between Milberg and Season 4, who acted as that law firm's agent in finding and connecting it with potential plaintiffs in the Underlying Action; (3) the work product of Milberg and Season 4 created in anticipation of the Underlying Action; and (4) Season 4's confidential commercial information. But the

improper nature of the Subpoena is all-the-more evident because the information PharmaCare seeks bears no relevance to the pending claims and defenses at issue in the Underlying Action, and appears designed primarily to harass Plaintiffs' counsel, deter potential clients from pursing claims against PharmaCare, and create undue burdens on Season 4.

PharmaCare is not the first class action defendant that has improperly sought discovery of Season 4's privileged communications with counsel and its prospective clients, in an attempt to deter future claims from being brought against it. In fact, PharmaCare raises nearly identical arguments that the District Court rejected less than a year ago in *Berger Montague et al. v. Robinhood Financial, LLC*, 1:23-mc-00075-JPC (S.D.N.Y.) ("Robinhood") when considering Season 4's motion to quash an analogous subpoena. *See Robinhood*, ECF No. 31 (Apr. 24, 2023 Hearing Tr.) (the "*Robinhood* Hearing," attached as Ex. A to Declaration of Matthew Coin ("Coin Decl.")); ECF No. 30 (Apr. 25, 2023 Order granting motion to quash directed at Season 4) (attached as Ex. B to Coin Decl.). PharmaCare's Motion fails for the same reasons as the subpoena at issue in *Robinhood*: the Subpoena seeks documents that are plainly privileged and protected from disclosure; the documents are not relevant to the claims and defenses in the underlying litigation; and disclosure would be unduly burdensome, risk serious harm to Season 4's commercial interests, and create an enormous chilling effect on future claimants.

2

## II.    FACTUAL BACKGROUND

### A.    The Underlying Action

Plaintiffs commenced this putative class action against Defendants, who market and sell dietary supplements containing elderberry (the "Elderberry Products"), in the U.S. District Court for the Southern District of California on July 18, 2023. *See Sunderland et al. v. PharmaCare U.S., Inc. et al.*, No 3:23-cv-1318-JES-AHG (the "Underlying Action"), ECF No. 1. The Complaint alleges that Defendants violated California, New York, and other states' laws by unlawfully marketing and selling Elderberry Products that were falsely advertised as containing a unique and proprietary virologist-developed elderberry extract when, in fact, it simply contained elderberry juice.[1] *Id.*, ¶¶ 32–40. PharmaCare answered the Complaint on August 16, 2023. *See* ECF No. 4.

### B.    Background On Season 4, LLC

Season 4 is a company based in Warren, New Jersey, that administers and creates content for the website ClassAction.org. Declaration of Matthew Clemente ("Clemente Decl.") ¶ 2. Season 4 provides support services to law firms who advertise through the ClassAction.org website, including information to the public

---

[1] The Complaint includes causes of action based on Defendants' violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; California's False Advertising Law ("FAL") Cal. Bus. & Prof. Code § 17500 *et seq.*; California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; New York Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law §§ 349–350; and for breach of express warranties.

and to prospective law firm clients concerning various pending class action litigation. *Id.* ¶ 5. As part of its services, Season 4 strategically coordinates with law firms in connection with pending or anticipated litigation and places advertisements on their behalf. Season 4's advertisements assist the law firms in identifying prospective clients who wish to be represented by counsel in such litigation. *Id.* ¶ 5.

The ClassAction.org website also provides general news and information regarding major litigation and legislation that affects consumers' rights. In contrast to the advertisements Season 4 places on behalf of law firms, these news articles and updates do not solicit information from prospective clients or claimants and do not allow for any such information to be submitted. *Id.* ¶ 7. The ClassAction.org website also allows visitors to subscribe to its periodic newsletters. The newsletters contain excerpts from, and links to, information available on the ClassAction.org website, including current advertisements and general news updates. *Id.* ¶ 8. Subscribers to the ClassAction.org newsletter have not necessarily responded to any of Season 4's advertisements for law firms on the ClassAction.org website, and in fact, many subscribers have never responded to Season 4's advertisements. *Id.*

Of relevance here, Milberg retained Season 4 to assist its anticipated litigation efforts in connection with the Underlying Litigation. *Id.* ¶ 12. As part of this retention, Season 4 acted as Milberg's agent—conducting advertising on its behalf seeking to facilitate a connection with prospective clients living in California or New

York regarding anticipated claims against PharmaCare that were later brought in the Underlying Litigation. *See id.* ¶¶ 12, 14 The advertisement sponsored by Milberg on the ClassAction.org seeking prospective clients was active from June 26 until July 6, 2023, and clearly identified Milberg as the law firm pursuing potential claims against Pharmacare. *Id.* ¶ 14. Prospective Milberg clients responded to the advertisements by submitting confidential information to allow Milberg to evaluate their potential claims and determine if they were potentially qualified to be claimants in the litigation. *Id.* ¶ 15. The prospective client leads were automatically forwarded to Milberg for review, consideration and evaluation.

Prospective Milberg clients responding to Season 4 advertisements were expressly assured that their confidential information would be safeguarded, maintained as confidential, and forwarded to Milberg for evaluation. *Id.* ¶ 16. The ClassAction.org website advises that information submitted in response to Season 4's advertisements will only be forwarded "to attorneys so that they can provide you with legal services," and Season 4 will not "sell anyone's information to a third party" or "produce anyone's information unless compelled by law." *See id.* ¶ 17–18 ("S4 keeps your inquiries regarding possible inclusion in or participation in a lawsuit or settlement confidential unless ordered to produce them by a court of law"). The information received from prospective clients was in fact kept confidential from all outside parties other than Milberg and its agents. *Id.* ¶ 16.

Season 4 received confidential information from prospective clients who responded to its advertisements and sought to communicate with Milberg, but did not have further contact with those prospective clients. *Id.* ¶ 20. Season 4 views the prospective clients' information as confidential in nature and treats it as such. *See id.* ¶¶ 16, 20. Season 4 also maintains as confidential its proprietary advertising techniques relating to confidential research and commercial information. *Id.* ¶ 21. Season 4 ability to protect future claimants' confidential information, as well as the confidentiality of its communications with the law firms that sponsor its activities, are essential to its business and reputation. *See id.* ¶¶ 21–22.

## C.    Defendant's Subpoena And Season 4's Timely Objections

Pharmacare served a third-party subpoena for documents on Season 4 on or about January 9, 2024. *See* ECF No. 1-3 (the "Subpoena"). Prior to retaining counsel, a non-attorney member at Season 4 emailed Pharmacare's counsel and requested a brief 10-day extension of time so that Season 4 could "put together our response" to the Subpoena. *See* Clemente Decl. ¶ 4; ECF No. 1-11. Counsel for Pharmacare subsequently agreed, without any conditions, to extend the time for Season 4 to respond to the Subpoena until February 5, 2024. *See id.* Season 4 subsequently retained counsel, and timely served its responses and objections to the Subpoena on February 5, 2024, in accordance with the prior agreement of Pharmacare's counsel. *See* Clemente ¶ Decl. 4; ECF No. 1-12.

Pharmacare's Subpoena includes facially overbroad document requests that are irrelevant to the claims and defenses in the Underlying Litigation, and improperly targets privileged documents and communications involving Milberg, its agents, and its prospective clients regarding the Underlying Litigation. Specifically, the Subpoena seeks six categories of documents:

(1)   Confidential communications and information from Milberg's prospective clients that responded to Season 4's advertising and sought to have their potential claims against Pharmacare evaluated by the law firm—including prospective clients that became the actual Plaintiffs in the Underlying Litigation. Request No. 1 ("[a]ll documents relating to any Claimant," including communications with and information from prospective Milberg clients regarding claims against Pharmacare).

(2)   Work product of Milberg and its agents, including Season 4, created in anticipation of litigation. *See* Request No. 2 ("[a]ll documents relating to any analysis" performed by Milberg or its agents regarding its prospective clients and their claims).

(3)   Confidential communications between Milberg and its agent, Season 4. *See* Request No. 3 (requesting "[a]ll documents relating to the referral of any Claimant(s) to a lawyer"); Request No. 6 ( "[a]ll communications" between Season 4 and Milberg "related to any Claimants or their Claims").

(4)   "All documents" related to Season 4's advertising efforts it performed as Milberg's agent in connection with the Underlying Litigation. *See* Request No. 4 ("[a]ll documents relating to marketing or advertising directed to actual or potential Claimants" to join the lawsuit in the Underlying Litigation).

(5)   Season 4's confidential commercial information, including its marketing contracts and other financial information. Request No. 5 ("[a]ll documents relating to your agreements" with Milberg regarding the Underlying Litigation); Request Nos. 7–8 ("[a]ll documents" regarding Season 4's ownership and "financial interest").

(6)     Overbroad, duplicative "catchall" requests. Request Nos. 9–10 ("[a]ll documents related to the Products" and "[a]ll documents related to the Lawsuit").

Season 4 objected to the Subpoena and each of its requests as improper on numerous grounds, including because the Requests: (1) target communications and documents protected from disclosure by the attorney-client privilege, work product doctrine, and other related privacy considerations; (2) are facially overbroad, seek documents that are not relevant to the claims and defenses in the Underlying Litigation, and not proportional to the needs of the case; (3) seek disclosure of Season 4's confidential commercial information; and (5) are unduly burdensome and compliance would risk material harm to Season 4's future business efforts. *See* ECF No. 1-12. In response to Request No. 4, which broadly seeks "[a]ll documents" related to Season 4's advertisements conducted as Milberg's agent, Season 4 agreed to produce the only non-privileged materials in its possession that are even tangentially relevant: its published advertising or marketing material regarding the Underlying Litigation. *See id.*

Following its production of the published advertising material, Season 4 timely produced a categorical privilege log for all documents withheld on the basis of privilege. ECF No. 1-15. The vast majority of the privileged documents include communications and information from Milberg's prospective clients in the Underlying Litigation. The remainder of the privileged documents include

8

communications between Milberg and its agents, including Season 4, regarding: (a) the commencement and status of Season 4's advertisements for Milberg seeking prospective clients for the Underlying Litigation, and (b) the intake questions to be used by prospective clients responding to those advertisements. *See id.*

## III.    LEGAL STANDARD

As a non-party to the Underlying Litigation, Season 4 is "afforded greater protection from discovery than a normal party." *See Korotki v. Cooper Levenson, Apr., Niedelman & Wagenheim, P.A.*, 2022 WL 2191519, at *3 (D.N.J. June 17, 2022) (citation omitted). Courts have recognized that protections for non-parties from discovery include: (1) requiring "a stronger showing of relevance than for simple party discovery;" (2) "[t]he required Rule 26(b)(1) proportionality analysis may be different when the interests of a third-party are weighed as opposed to a party;" (3) "appropriate consideration in this undue burden calculus;" and (4) affording "special weight in evaluating the balance of competing needs in a Rule 45 inquiry" to the "unwanted burden thrust upon non-parties." *See id.* (citations omitted); accord *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218–19 (N.D. Cal. 2015) ("[T]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.") (citation omitted); *Wi-Lan Inc. v. Rsch. in Motion Corp.*, 2010 WL 2998850, at *3 (S.D. Cal. July 28, 2010) ("Where discovery is sought from a non-party, the Court

should be particularly sensitive to weighing the probative value of the information sought against the burden of the production on the nonparty.").

When assessing the reasonableness of a subpoena, courts must balance: "(1) the relevance; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by it; (5) the particularity with which the documents are described; (6) the burden imposed; and (7) the subpoena recipient's status as a nonparty to the litigation." *In re EthiCare Advisors, Inc.*, 2020 WL 4670914, at *3 (D.N.J. Aug. 12, 2020).

## IV.    ARGUMENT

### A.    The Motion Should Be Denied Because It Seeks Information Protected By The Attorney Client Privilege

The Subpoena improperly seeks information that is protected by the attorney-client privilege, including, *inter alia*: all communications between Season 4 and Plaintiffs' Counsel regarding the Underlying Litigation or any prospective client; all documents relating to ClassAction.org advertisements that seek to assist potential claimants and prospective clients in obtaining legal services from Plaintiffs' Counsel with respect to potential claims against PharmaCare; and all confidential communications and information collected from those prospective clients when seeking legal services. *See* ECF No. 1-3. The attorney-client privilege plainly applies to Season 4's communications with Plaintiffs' Counsel and the prospective clients that have sought legal advice regarding potential claims.

10

### 1. *California Law Governs Determinations Of Privilege*

In diversity actions, courts "are to decide issues of attorney-client privilege based on state law." *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 237 n.3 (D.N.J. 2022). Plaintiffs' claims in the Underlying Action were brought based on diversity jurisdiction, Compl. ¶ 22, and accordingly state law governs determinations of privilege. PharmaCare assumes, without analysis, that New Jersey privilege law applies. *See* Motion at 12. But to resolve which state's laws on privilege apply, the Court must first look to New Jersey's choice of law rules. *See Tartaglia v. Paul Revere Life Ins. Co.*, 948 F. Supp. 325, 326 (S.D.N.Y. 1996) (explaining that "[f]ederal district courts sitting in diversity cases apply the conflict of laws rules prevailing in the state in which they are situated," and applying New York's choice of law rules to determine which state's privilege law applies to motion to compel brought under Rule 45 in diversity case); *accord Bogard Constr., Inc. v. Oil Price Info. Serv., LLC*, 604 F. Supp. 3d 895, 900–01 (N.D. Cal. 2022) (applying Maryland choice of law rules to determine which state's law governs privilege questions where Maryland was the "original forum for this Rule 45 subpoena compliance proceeding" prior to being transferred pursuant to Fed. R. Civ. P. 45(f)).

New Jersey applies "the most significant relationship" test to resolve choice of law issues. *See Curtiss-Wright Corp. v. Rodney Hunt Co.*, 1 F. Supp. 3d 277, 283 (D.N.J. 2014). Under this test, courts first "examine the substance of the potentially

applicable laws to determine if an actual conflict exists." *Id.* If there is no "actual conflict," then "the law of the forum state applies;" but if a conflict exists, then "the court must then determine which jurisdiction has the 'most significant relationship' to the claim. *See id.*

The Court should apply California privilege law. Under the first prong of the test, there is an "actual conflict" because attorney-client communications are afforded greater protection under California law than under New Jersey law. Under California law, the attorney-client privilege "is absolute" and "prevents disclosure of the communication regardless of its relevance, necessity or other circumstances peculiar to the case." *Carroll v. Comm'n on Tchr. Credentialing*, 270 Cal. Rptr. 3d 448, 458 (Ct. App. 2020) (citation omitted); accord *DP Pham, LLC v. Cheadle*, 200 Cal. Rptr. 3d 937, 945 (Ct. App. 2016) ("The attorney-client privilege protects the transmission of information regardless of the content or whether the information is discoverable from other sources."). Under New Jersey law, however, the attorney-client privilege is qualified and "must cede," for example, "where the public interest demands that it give way because there is a legitimate need for the information sought, it is relevant to the issue before the court, and it cannot be obtained from any less intrusive source." *Horon Holding Corp. v. McKenzie*, 775 A.2d 111, 116 (App. Div. 2001); accord *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207,

217 (D.N.J. 2023) ("While the federal attorney-client privilege is absolute, the New Jersey state privilege is qualified.") (citation omitted).

Under the second prong, California law should govern determinations of privilege because it has the most significant relationship to the claims. Here: the relevant advertisement placed by Season 4 on behalf of Milberg was directed solely at consumers living in California or New York (*see* ECF No. 1-7); three of the five claims brought in the Complaint are based on violations of California state law; and the Underlying Litigation is pending in the Southern District of California. Accordingly, California has the "most significant relationship" to the claims, and California state law should govern.[2]

### 2. The Attorney-Client Privilege Applies To Communications Between Plaintiffs' Counsel, Counsel's Agents, And The Prospective Clients

The "fundamental purpose" of the attorney-client privilege "is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters." *Costco Wholesale Corp. v. Superior Ct.*, 219 P.3d 736, 740 (Cal. 2009) (citation

---

[2] In any event, regardless of which state's law applies, the attorney-client privilege extends to Season 4, which was acting as Milberg's agent by finding and connecting prospective clients seeking legal advice with the law firm. Accordingly, Season 4 cites New York and New Jersey law where appropriate, to the extent the Court declines to engage in this choice of law analysis.

omitted). Under California law, "[t]he attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Id.* at 741. For purposes of attorney-privilege, a "confidential communication" means:

> "[I]nformation transmitted between a client and his or her lawyer in the course of [the attorney-client] relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted…."

*Id.* (quoting Cal. Evid. Code § 952).

### a. The Attorney Client Privilege Applies To Communications With Prospective Clients And An Attorney's Agent

Whether the prospective clients responding to Season 4's advertisements ultimately retained Milberg is immaterial for purposes of determining whether their communications are privileged. "Prospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege under California law, regardless of whether they have retained the lawyer, and regardless of whether they ever retain the lawyer." *Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005).[3]

---

[3] The same is true under New York law. *See, e.g.*, *Streichert v. Town of Chester, New York*, 2021 WL 735475, at *7 (S.D.N.Y. Feb. 25, 2021) ("The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance, and therefore may attach to a

Under California law, the attorney-client privilege also extends to confidential communications with agents of an attorney, including "third persons to whom disclosure is reasonably necessary to further the purpose of the legal consultation." *Ins. Co. of N. Am. v. Superior Ct.*, 166 Cal. Rptr. 880, 884 (Ct. App. 1980); *State Farm Fire & Cas. Co. v. Superior Ct.*, 62 Cal. Rptr. 2d 834, 844 (Ct. App. 1997) ("It is no less the client's communication to the attorney when it is given by the client to an agent for transmission to the attorney, and it is immaterial whether the agent is the agent of the attorney, the client, or both.") (citation omitted); *see In re Morning Song Bird Food Litig.*, 2015 WL 12791473, at \*5–6 (S.D. Cal. July 17, 2015) ( "[a] document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds," and "[t]he touchstone for deciding whether a 'nominal third party' is an agent of an attorney is whether a communication to that party was made for a legal purpose.") (citations omitted).[4]

---

prospective client's 'initial statements' to an attorney who is not ultimately hired.") (internal quotations and citations omitted). The same is also true under New Jersey law, which expressly defines a "client" for purposes of the attorney-client privilege to include a person or entity that "***consults*** a lawyer or the lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity." N.J. Stat. § 2A:84A-20(3) (emphasis added); *accord Herbert v. Haytaian*, 678 A.2d 1183, 1188 (N.J. Super. Ct. App. Div. 1996) ("The creation of an attorney-client relationship does not rest on whether the client ultimately decides not to retain the lawyer[.]").

[4] The same is true under New York and New Jersey law. *See, Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 57 N.E.3d 30, 35 (N.Y. 2016) ("[S]tatements made to the agents or employees of the attorney or client … retain their confidential

### b. Season 4 Was Acting As Milberg's Agent And Was Reasonably Necessary For Privileged Communications

Here, Season 4 was acting as an agent for Milberg, who sponsored the relevant ClassAction.org advertisement used by prospective clients to submit confidential information and seek legal advice for potential claims against Defendant. Clemente Decl. ¶¶ 14–15. Season 4 acts as a necessary conduit for prospective clients seeking to obtain legal advice, and thus, is "reasonably necessary" for the transmission of information between the prospective client and Milberg and to further the purpose for which Milberg is being consulted. *See id.* ¶ 5. Prospective clients provide confidential information to Season 4 *precisely because* Season 4 will "forward the information to attorneys"—specifically identified as the law firm Milberg "who has

---

(and therefore, privileged) character, where the presence of such third parties is deemed necessary to enable the attorney-client communication and the client has a reasonable expectation of confidentiality."); *Farzan v. Wells Fargo Bank*, 2012 WL 6763570, at *1 (S.D.N.Y. Dec. 28, 2012) (communications made to non-attorney conducting factual investigation and acting as attorney's agent privileged); *H.W. Carter & Sons, Inc. v. William Carter Co.*, 1995 WL 301351, at *3 (S.D.N.Y. May 16, 1995) (privilege extended to public relations firm that "participated to assist the lawyers in rendering legal advice"); *State v. Blacknall*, 760 A.2d 1151, 1153 (N.J. Super. Ct. Law. Div. 2000) (privilege extends "to any person who is or may be the agent of either the attorney or the client"); *Conforti & Eisele, Inc. v. Div. of Bldg. & Const., Dep't of Treasury*, 405 A.2d 487, 490 (N.J. Super. Ct. Law. Div. 1979) ("[T]he policy behind extending the attorney-client privilege to an agent of the attorney should apply regardless of the capacity in which the agent acts."); *see also* Restatement (Third) of the Law Governing Lawyers § 70 (cmt. g) (2000) (attorney-client privilege extends to "appropriate nonlawyer staff" and "independent contractors … such as an accountant or physician retained by the lawyer to assist in providing legal services to the client and not for the purpose of testifying").

sponsored this investigation"—who then use that protected information to evaluate the strength of any potential claims. *See id.* ¶ 15–17; ECF No. 1-3.

PharmaCare dismisses Season 4's technical expertise and necessary role by speculating that prospective clients can contact Milberg directly. *See* Motion at 14. This misses the point—Season 4 was "*reasonably* necessary" to facilitate the connection between prospective clients and Milberg because, without Season 4's participation, the privileged communications may not have occurred *at all*. *See* Clemente Decl. ¶ 5. By PharmaCare's flawed logic, communications from a client to an attorney's support staff would not be "necessary," and thus not privileged, because they could conceivably be made directly to an attorney. But such a result is contrary to California law. *See* Cal. Evid. Code § 952, 1965 Cal. Law Revision Comm'n Cmts. (privilege extends to "lawyer's secretary, a physician, or similar expert" because "they are reasonably necessary for the transmission of the information"). The *Robinhood* Court also rejected this same argument in an analogous class action because Season 4's "marketing and connection services were necessary to [the law firm] to obtain clients". *Robinhood Hearing* at 40:19–24.

Likewise, the fact that another agent of Milberg, First Class Intake, took part in privileged communications does not defeat the claim of privilege. Attorney-client privilege is not waived "when more than one agent of the attorney or of the party handles the communication." *Soltani-Rastegar v. Superior Ct.*, 256 Cal. Rptr. 255,

258 (Ct. App. 1989). Here, First Class Intake was also acting as an agent for Milberg in connection with the ClassAction.org advertisement at issue. Clemente Decl. ¶¶ 9–11, 13. Season 4 worked closely with First Class Intake and Milberg when creating the advertisement campaign, and to reach and facilitate a connection with prospective clients seeking to bring claims against PharmaCare. *Id.* ¶¶ 11, 13. First Class Intake provided call center services for Milberg's prospective clients responding to Season 4's advertisements, and was responsible for the intake process for Milberg's prospective clients. Moreover, the efficacy of Season 4's outreach to prospective Milberg clients depended on First Class Intake's services, and vice versa, and Milberg's mental impressions and legal strategy was communicated to both entities in furtherance of the anticipated litigation. *See id.* ¶¶ 11–13. As such, First Class Intake was also "reasonably necessary" for the transmission of information between the prospective client and Milberg and to further the purpose for which Milberg is being consulted.

### c. The Communications Were Intended To Be Confidential And Remained Confidential

In establishing the confidentiality of communications, "[m]ore important than what the law firm intended is what the clients thought." *Barton*, 410 F.3d at 1107. Here, Season 4 assured prospective clients responding to the advertisement that information they provided to Season 4 would be safeguarded and forwarded to Milberg for evaluation of anticipated litigation against PharmaCare. *See* Clemente

Decl. ¶¶ 14–16. Moreover, the ClassAction.org website expressly provides that Season 4 will forward users' information to the lawyers sponsoring the relevant submission forms so that their potential claims can be reviewed, and will otherwise be kept confidential and protected from disclosure. Clement Decl. ¶ 17 ("When you fill out a form on our site, we will only forward the information to attorneys so that they can provide you with legal services …. We take our users' privacy seriously, and we won't produce anyone's information unless compelled by law").

The Terms of Use also make clear that information submitted to Season 4 will be kept confidential. *See* Clemente Decl. ¶ 18 (Season 4 forwards information provided "to the lawyers, law firms, legal financial service providers, or other legal service providers … and **keeps this information confidential**"); *id.* (Season 4 keeps uses' inquiries "**confidential unless ordered to produce them by a court of law**") (emphasis added). As such, potential claimants responding to the relevant advertisement sponsored by Milberg are assured that their information will be provided to Milberg, their information kept confidential, and they are "likely to think that [they are] requesting that the law firm include [them] in the class action mentioned at the beginning of the form." *See Barton*, 410 F.3d at 111. And in fact, all relevant communications sought by the Subpoena between Season 4 and (a) the prospective clients responding to the advertisements, or (b) Plaintiffs' counsel and its agents were maintained as confidential. Clement Decl. ¶¶ 16, 21–22.

19

Notwithstanding, PharmaCare argues that, because the ClassAction.org website "disclaims" that an attorney-client relationship is formed through a user's mere response to Season 4's advertisements, then any communications from prospective clients responding to Season 4's advertisements are necessarily not privileged. *See* Motion at 13. The Ninth Circuit rejected a nearly identical argument in *Barton*, where prospective plaintiffs filled out questionnaires with a check box requiring each individual to "disclaim a purpose of 'requesting legal advice,' and to acknowledge that the submitter is not 'forming an attorney client relationship by sending in the answers." 410 F.3d at 1111. As the Ninth Circuit explained, "the box did not disclaim the purpose of 'securing legal service,' and the questionnaire was "designed so that a person filling it out and submitting it is likely to think that he is requesting that the law firm include him in the class action mentioned at the beginning of the form." *Id.*; *see Don v. Unum Life Ins. Co. of Am.*, 2014 WL 12603207, at *2 (C.D. Cal. Nov. 4, 2014) (the attorney client privilege applies to "prospective class members from whom lawyers were gathering information"); *Rosso, Johnson, Rosso & Ebersold v. Superior Ct.*, 191 Cal. App. 3d 1514, 1518 (Ct. App. 1987) (attorney-client privilege applies to the identity of nonparty clients or prospective clients, even where the law firm was not retained).[5]

---

[5] *See also De La O v. Arnold-Williams*, 2007 WL 9717727, at *2–3 (E.D. Wash. Mar. 8, 2007) (holding that "group meetings with attorneys preliminary to class action litigation are subject to attorney client privilege," and "the contents of such

Importantly, the *Robinhood* Court rejected PharmaCare's exact argument regarding the ClassAction.org website. After examining the terms and conditions on the ClassAction.org website, the District Court concluded that the plaintiffs and consumers responding to Season 4's advertisements "reasonably believed their communications would be kept confidential." *Robinhood* Hearing at 40:25–41:16. The *Robinhood* Court also rejected the defendant's attempt to rely on *In re: 3M Combat Arms Earplug Products Liability Litig.* (*"Top Class Actions"*), 2021 WL 952315 (N.D. Fl. March 12, 2021)—which PharmaCare also does—because:

> [U]nlike Season 4, Top Class Actions "warned users that any information a user provides through the website was considered nonconfidential and nonproprietary; that [Top Class Actions] could disclose it to third parties under various circumstances (beyond what the privilege would allow), and that [Top Class Actions] could not guarantee that the information you submit to us will not end up in the hands of the company or person that you are complaining about."

*See Robinhood* Hearing at 41:23– 42:5. *Top Class Actions* is plainly inapposite.

Season 4 is a necessary conduit that facilitates privileged attorney-client communications between prospective clients and Milberg. Accordingly, the

---

meetings are not discoverable in litigation with persons outside of the group"); *Coe v. Cross-Lines Ret. Ctr., Inc.*, 2022 WL 17338289, at *5 (D. Kan. Nov. 30, 2022) (explaining that "[t]he practice of gathering confidential information from prospective clients via a questionnaire is fairly common in cases involving large numbers of clients" and finding that the questionnaires were protected under the attorney-client privilege regardless of "[w]hether or not a particular resident had actually retained [the law firm] at the time of submission"); *Vodak v. City of Chicago*, 2004 WL 783051, at *2–3 (N.D. Ill. Jan. 16, 2004) (completed questionnaires by prospective clients were privileged).

Subpoena seeks to directly undermine the very purpose of the privilege by chilling the "full and open discussion" of legal matters by improperly seeking disclosure of the communications to an adversary. *See Costco*, 219 P.3d at 740; *accord Barton*, 410 F.3d at 1112 ("Potential clients must be able to tell their lawyers their private business without fear of disclosure, in order for their lawyers to obtain honest accounts on which they may base sound advice and skillful advocacy."). The Motion should be denied.

### d.    Season 4 Has Standing To Assert Privilege

In an attempt to sidestep the fact that the Subpoena targets privileged information, PharmaCare suggests that a person or entity acting as an agent of an attorney "lacks standing" to assert any claim of privilege. *See* Motion at 11–12. PharmaCare's contention is without merit. *See, e.g.*, *Bronsink v. Allied Prop. & Cas. Ins.*, 2010 WL 786016, at *2 (W.D. Wash. Mar. 4, 2010) ("A third party may claim attorney-client privilege if that third party is an agent of the attorney or the client and they are essential to the giving of legal advice."); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 216–17 (S.D.N.Y. 2001) (denying motion to compel where public relations firm acting as defendant's agent "asserted both attorney-client privilege

and work-product immunity").[6] In any event, this is largely an academic question to the extent Milberg also asserts privilege.

### B. The Motion To Compel Must Be Denied Because The Subpoena Targets Information Protected By The Work Product Doctrine

PharmaCare's Motion should similarly be denied because the Subpoena also seeks communications and documents protected from disclosure by the work product doctrine. "Unlike the attorney-client privilege, the work-product doctrine is governed by a uniform federal standard even in diversity cases." *Meoli v. Am. Med. Serv. of San Diego*, 287 B.R. 808, 813 (S.D. Cal. 2003). The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3), which provides that ordinarily "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id.* The work-product rule is designed "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021) (citation omitted). Because attorneys "often must rely on the

---

[6] *See also United States v. Kovel*, 296 F.2d 918, 920 (2d Cir. 1961) (accountant acting as agent of law firm declined to provide information "on the ground that it is a privileged communication"); Restatement (Third) of the Law Governing Lawyers § 86 cmt. c (2000) ("A client's lawyer has both standing and usually a duty to assert the privilege," and "a similar duty might also rest upon an agent of the lawyer.").

assistance of investigators and other agents" in preparation for litigation, the work product doctrine necessarily protects "material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238–39 (1975).

To qualify for protection under the work product doctrine, "documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.' *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.*), 357 F.3d 900, 907 (9th Cir. 2004) (quoting Fed. R. Civ. P. 26(b)(3); *see also* Fed. R. civ. P. 26(b)(3)(A) (another party's "representative" includes "other party's attorney, consultant … or agent"). The work product doctrine covers both "fact work product" and "opinion work product." A party seeking to discover fact work product must demonstrate "substantial need and undue hardship sufficient to justify the production of fact work product." *United States ex rel. Everest Principals, LLC v. Abbott Lab'ys*, 2023 WL 8040762, at *5 (S.D. Cal. Nov. 20, 2023). Opinion work product, on the other hand, is entitled to "nearly absolute protection." *See id.* at *3; *accord* Fed. R. Civ. P. 26(b)(3)(B) (courts "must protect against disclosure of the mental impressions, conclusions, opinion, or legal theories of a party's attorney or other representative concerning the litigation"); *Hickman v. Taylor*, 329 U.S. 495,

510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.").

Here, the Subpoenas plainly seek documents covered by the work product doctrine, including communications with Milberg concerning responses from prospective clients and Milberg's engagement of Season 4 for the Underlying Litigation. That is, the Subpoena seeks: (1) the production of documents or tangible things; (2) that were prepared in anticipation of litigation against Defendant for its unlawful marketing and false advertising practices; and (3) the documents sought, including the questions to be completed by Milberg's prospective clients, were prepared by Milberg and its agents.

Indeed, courts have made clear that the information sought by the Subpoenas—including the identities of putative class members—goes to the heart of the interests protected by the work product doctrine by seeking materials that constitute opinion work product. *Don v. Unum Life Ins. Co. of Am.*, 2014 WL 12603207, at *2, is instructive. There, the defendant sought to compel production of communications between plaintiff's counsel and six unnamed putative class members. *Id.* at *1. The District Court first held that communications between counsel and the putative class members were privileged under the attorney-client privilege, relying on the Ninth Circuit's holding in *Barton*. *See id.* at *2. Importantly, the District Court was then "equally if not more persuaded" that the communications

were entitled to opinion work product protection, including "disclosure even of the identities of the six putative class members." *Id.* It further explained: "disclosure of the identity of the particular putative class members contacted by Plaintiff's counsel would open the door to revealing Plaintiff's counsel's strategy and mindset as to why he might have chosen to interview or contact those individuals and not others; what counsel included in those communications; and perhaps what the insureds later disclosed to Plaintiff's counsel, if that occurred." *Id.*[7]

Again, the *Robinhood* Court's decision is on point. Applying federal law, the Court found that "documents and communications between Season 4 and [the law

---

[7] *See Ferruza v. MTI Tech.*, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002) ("Although the identity and location of witnesses that may have knowledge of any discoverable matter is not protected, the identity of witnesses interviewed by opposing counsel is protected" as work product and goes "to the heart of the work product rule."); *Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*, 2020 WL 13077200, at *5 (E.D.N.Y. June 5, 2020) (discovery request "asking plaintiffs' counsel to go through the list of witnesses and identify which witnesses counsel chose to interview" is "clearly work product"); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 2644243, at *5 (N.D. Ill. June 27, 2019) (interrogatory "asking defendants to identify the people their lawyers selected to interview" seeks "to reveal their lawyers' mental processes," and is thus "an impermissible invasion of work product"); *Steele v. CVS Pharmacy, Inc.*, 2016 WL 1659317, at *2 (S.D.N.Y. Apr. 18, 2016) ("[T]he identities of third-party witnesses pertinent to this case have the potential to reveal counsel's opinions, thought processes or strategies and are, therefore, protected as work product."); *see also United States v. Vepuri*, 2022 WL 3648184, at *2 (E.D. Pa. Aug. 24, 2022) ("The compilation of witness lists and other materials by or at the direction of counsel can constitute work product."); *Seebeck v. Gen. Motors Corp.*, 1996 WL 742914, at *1–3 (N.D. Ga. May 17, 1996) (list of witnesses interviewed by the attorney was protected as work product because the decision as to which persons to interview was based on legal work and analysis).

firm] concerning the web form responses and [the law firm's] engagement of Season 4 related to the underlying class action" were "either protected attorney work product or are not relevant to the underlying litigation." *Robinhood Hearing* at 43:13-18. The *Robinhood* Court also rejected PharmaCare's argument that Season 4's withheld documents relate to "mere business services" rather than "legal strategy." *See* Motion at 15. Here, just as in *Robinhood*, "the only reason [the law firm] retained Season 4 was because it was planning to bring a new class action against [the defendant] and sought to have help finding plaintiffs." *See Robinhood* Hearing at 45:17–21. PharmaCare seeks the exact same categories of documents as the defendant in *Robinhood*, and these documents are equally entitled to protection as work product under federal law.

The work-product doctrine is particularly appropriate here because documents and communications sought would reveal the evaluations, mental impressions, opinions, and legal strategy of Plaintiffs' Counsel and its agents, including, *inter alia*, the identity of putative class members that Plaintiffs' Counsel chose to interview as well as which identity of putative class members Plaintiffs' Counsel ultimately chose not to include as a named party. *See Robinhood* Hearing at 45:22–46:4. This information is squarely opinion work product, and as such, is entitled to "nearly absolute protection" from disclosure. *Everest Principals*, 2023 WL 8040762, at *5. Moreover, as discussed below, the information sought by the

subpoenas is utterly irrelevant to the underlying claims and defenses at issue in the litigation, and thus PharmaCare falls *well* short satisfying the heightened standard necessary to overcome the work product doctrine.

### C. The Motion to Compel Should Be Denied Because Disclosure Of The Prospective Clients' Identities Would Invade Their Reasonable Expectation Of Privacy

Separately, even absent the attorney-client privilege and the work product doctrine that apply to the documents and communications sought by the Subpoena, the Subpoena also seeks sensitive information that would invade prospective clients' reasonable expectation of privacy when submitting information for the purpose of seeking legal advice. It is well established that courts may limit discovery based on a subpoenaed party's privacy interests. *See S. California Hous. Rts. Ctr. v. K3 Holdings, LLC*, 2022 WL 17333390, at *9 (C.D. Cal. Oct. 18, 2022) ("Federal courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests.").[8] An individual's inalienable right to privacy is enshrined in the Constitution of the State of California. Cal. Const. art. I, § 1.

---

[8] *See Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1336–37 (11th Cir. 2020) ("[F]ederal courts have recognized that privacy interests and confidentiality concerns can factor into a decision whether to quash a subpoena under Rule 45, even though the information requested by the subpoena is not subject to a federal evidentiary privilege.") (collecting cases); *see also Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928 (7th Cir. 2004) (affirming district court's order quashing subpoena seeking medical records based on privacy concerns of patients); *Bhatt v. Lalit Patel Physician P.C.*, 2020 WL 13048694, at *3 (E.D.N.Y. Oct. 19, 2020)

Here, Season 4, Milberg, and the prospective clients had a reasonable expectation of privacy that the documents and communications sought by the Subpoena would remain confidential. Indeed, the advertisements were created specifically so that the prospective clients could connect with and seek legal advice from Milberg, with the expectation that their personal and confidential information would not be made public or made available to PharmaCare—the very party whose actions prompted the prospective clients to seek legal advice in the first place. *See* Clemente Decl. ¶¶ 15–18. Moreover, Season 4 had a reasonable expectation, and at all times believed, that its communications with Milberg and information received from prospective clients would remain protected from disclosure to Defendant. *Id.* ¶¶ 15–16, 20–22. Given that the Rules of Professional Conduct generally prohibit lawyers from using or revealing information learned from a prospective client "[e]ven when no client-lawyer relationship ensues," Cal. RPC 1.18(b), prospective clients had a reasonable expectation of privacy in their communications for the purpose of seeking to be represented in the underlying action.

Milberg's prospective clients have privacy interests in not being identified to PharmaCare and not being dragged into litigation they chose not to pursue. Should PharmaCare be permitted to conduct such discovery, it would have an immense

---

("[t]ax returns constitute 'other protected matter'" under Rule 45 due to "the private nature of the sensitive information contained therein").

chilling effect on future consumers' ability to seek legal advice and explore legal action against bad corporate actors.

**D.    The Motion Should Be Denied Because the Subpoena Seeks Disclosure of Season 4's Confidential Commercial Information**

The documents and communications sought by the Subpoenas—(over)broadly seeking all documents and communications relating to Season 4's advertisement, all communications and information from anyone who responded to the advertisement, and its confidential marketing contracts with Plaintiffs' counsel and other financial information—encompasses Season 4's confidential research and commercial information. *See* Clemente Decl. ¶ 21. As discussed below, Season 4's confidential marketing contracts and other financial information is not relevant to the claims and defenses at issue in the Underlying Litigation, and disclosure would seriously harm Season 4's business. *Id.* Moreover, the information sought by PharmaCare—the confidential communications and information from prospective clients seeking to be connected with lawyers for the purpose of obtaining legal advice—goes to the heart of Season 4's commercial interests. Disclosure would have the potential to create an enormous chilling effect, limiting the likelihood that other potential future claimants will respond to Season 4's advertisements, and therefore risks serious harm to Season 4's commercial interests. *See id.* ¶¶ 21–22.

Accordingly, the Motion should be denied for this additional reason. *See HP Tuners, LLC v. Sykes-Bonnett*, 2018 WL 10398216, at *1 (W.D. Wash. Sept. 12,

2018) (quashing subpoena seeking "confidential information such as the identities of [defendant's] customers").

### E. The Subpoena is Overbroad, Unduly Burdensome, And Not Proportional to the Needs of the Case

By its Subpoena, PharmaCare seeks myriad documents from Season 4. The Underlying Action arises out of allegations that PharmaCare falsely advertised its Elderberry Products as containing a unique and proprietary virologist-developed elderberry extract when, in fact, it simply contained elderberry juice. PharmaCare fails to satisfy even a threshold showing of relevance for the documents sought by the Subpoena. Because none of the documents sought are relevant to any claims or defenses in the Underlying Action, PharmaCare fails to satisfy even a threshold showing of relevance.

*First*, PharmaCare broadly seeks *all* documents and communications "between the Plaintiffs in the Sunderland Litigation (as well as absent putative class members)" because it asserts that such documents "likely contain information about the reasons consumers purchased the Products." *See* Motion at 9. PharmaCare overlooks that the focus of unlawful marketing and false advertising claims "is on the actions of the defendants, not on the subjective state of mind of the class members." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *Bruno v. Quten Rsch. Inst., LLC*, 280 F.R.D. 524, 535 (C.D. Cal. 2011) (explaining that "an injury exists under the UCL, FAL, and CLRA where a consumer

31

has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that members of the public are likely to be deceived," and rejecting defendants' argument "to abandon this objective test and instead contemplate hypothetical class members' individual interaction with the product"); *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 5505052, at *1 (C.D. Cal. Apr. 4, 2023) ("deception and materiality under California's consumer protection and express warranty laws are based on an objective standard"); *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995) (objective standard applies to determining whether acts or practices are materially deceptive or "likely to mislead a reasonable consumer acting reasonably under the circumstances").[9] Thus, the discovery sought is irrelevant. *See On the House Syndication, Inc. v. Fed. Exp. Corp.*, 203 F.R.D. 452, 457 (S.D. Cal. 2001) (rejecting defendants' attempt to seek discovery of absent class members because "it is not necessary that each Plaintiff must prove individual knowledge and reliance.").

Moreover, even assuming the reasons why Plaintiffs purchased the Elderberry Products were relevant to claims that the Elderberry Products were falsely marketed as containing a proprietary virologist-developed elderberry extract (rather than

---

[9] *See also Conde v. Sensa*, 2018 WL 4297056, at *4 (S.D. Cal. Sept. 10, 2018) ("Satisfaction (or lack thereof) is not the focus of the 'injury' requirement for a false advertising claim: A product can be falsely advertised even if people enjoy it.").

merely elderberry juice), PharmaCare does not even attempt to show why this information cannot be obtained from Plaintiffs, rather than non-party Season 4. *SPH Am., LLC v. AT&T Mobility, L.L.C.*, 2016 WL 11783677, at *2 (S.D. Cal. Oct. 27, 2016) ("Any burden to a non-party is an undue burden if a party to the litigation could have provided the same discovery."). Nor does PharmaCare identify any basis to seek discovery regarding absent class members. *See In re Worlds of Wonder Sec. Litig.*, 1992 WL 330411, at *2 (N.D. Cal. July 9, 1992) ("Absent class members are not parties and separate discovery of individual class members not representatives is normally not permitted."); accord *In re Allergan Generic Drug Pricing Sec. Litig.*, 2021 WL 236594, at *2 (D.N.J. Jan. 25, 2021) (absent class member discovery rarely appropriate because of "concerns that defendants may use such devices as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants.") (internal quotations omitted). Remarkably, PharmaCare also maintains that Subpoena is relevant to show why the named plaintiffs and absent class members in a *separate litigation*, *Corbett, et al. v. PharmaCare U.S., Inc.*, No. 21-cv-0137-JES-AHG, purchased Elderberry products. The relevant deadline for PharmaCare to seek discovery in *Corbett* expired on June 15, 2023. *See Corbett*, ECF. No. 166. The Court should reject PharmaCare's attempt to impermissibly seek discovery in *Corbett* after the expiration to do so has passed, under the guise of "relevance" to the Underlying Litigation.

*Second*, PharmaCare asserts that the discovery sought is somehow relevant to class certification issues, such as adequacy of counsel. *See* Motion at 10. Again, PharmaCare fails to explain why discovery from the parties *themselves* would be insufficient to address these class certification issues. Moreover, the *Robinhood* Court rejected similar arguments, finding that "the agreement, invoices, and communications between [the law firm] and Season 4" were irrelevant to "the adequacy of class counsel and named Plaintiffs." *Robinhood*, Ex. 1 at 47:12–19.

But in any event, the Requests, including Season 4's confidential marketing contracts and financial information, amount to a fishing expedition that this Court should not condone. "When assessing adequacy of counsel, courts are generally skeptical of defendants' ethical attacks on class counsel." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 47 (S.D.N.Y. 2012). Permitting PharmaCare to police the adequacy of class counsel is like "permitting a fox ... to take charge of the chicken house." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 895 (7th Cir. 1981). This kind of behavior by class action defendants "has convinced courts to preclude, or severely limit, their ability to raise alleged ethical violations in the context of class certification." *In re Pfizer*, 282 F.R.D. at 48. As a result, the subpoenaed documents are unlikely to be considered in determining counsel's adequacy and, thus, Season 4 should not have to produce them. *See Nguyen v. Lotus by Johnny Dung Inc.*, 2019 WL 3064479, at *4 (C.D. Cal. June 5,

2019) (denying discovery of solicitations and retainer agreements because "any arguable, minimal relevance of documents concerning solicitations or demand letters by counsel within the last five years or legal retainers in this case to any party's claim or defense is more than offset by the burden and expense in comparison to its likely benefit and its importance in resolving the issues"); *Walker v. Alta Colleges, Inc.*, 2010 WL 2710769, at *7 (W.D. Tex. July 6, 2010) (discovery into communications potentially relevant to counsel's adequacy should be protected because "the slight chance that the information would be relevant does not justify the burden and expense of conducting additional discovery on these peripheral issues").

Moreover, compliance with the Subpoena would be unduly burdensome and risks serious harm to Season 4's business interests going forward. The undue burden analysis "encompasses both the personal hardship to the subpoenaed party and the wider social consequences of permitting discovery." *In re Fosamax Prod. Liab. Litig.*, 2009 WL 2395899, at *3 (S.D.N.Y. Aug. 4, 2009) (undue burden where disclosure "risk[s] chilling participation in beneficial public research"); *accord Charles v. Quality Carriers, Inc.*, 2010 WL 396356, at *2 (S.D. Ind. Jan. 28, 2010) (undue burden where disclosure of expert's annual income would have chilling effect on the willingness of experts to testify); *see also Peninsula Pathology Assocs. v. Am. Int'l Indus.*, 2022 WL 19574484, at *2 (E.D. Va. Dec. 23, 2022) "cognizable burdens" include "the impact of production on privacy or confidentiality interests"

and "the interests—including business interests—of the recipient and others who might be affected," *aff'd*, 2023 WL 6192772 (E.D. Va. Aug. 14, 2023).

The Subpoena is overbroad on its face, seeking *all* communications with Plaintiffs' Counsel regarding the Underlying Action, *all* documents related to the ClassAction.org advertisements, and *all* communications with prospective clients (including the prospective clients that became actual Plaintiffs) that responded to the advertisements. Even more fundamentally, Defendant's efforts to seek discovery regarding communications from potential clients responding to Season 4's advertisements will likely cause material harm to Season 4's future business efforts. *See* Clemente Decl. ¶ 21–22. Season 4's advertisements are designed to allow prospective clients to securely submit information regarding potential claims, with the expectation that the information will be forwarded to Plaintiffs' counsel for the purpose of evaluating potential legal claims. *See id.* ¶¶ 15–18. Allowing PharmaCare access to these confidential communications meant for Milberg—when PharmaCare is the very party that prompted these prospective clients to seek legal advice because they believe they may have potential claims against it—would likely deter future claimants from responding to such advertisements. *Id.* ¶ 22.

Similarly, requiring Season 4 to disclose its communications with Plaintiffs' counsel to PharmaCare, regarding the very litigation for which counsel hired Season 4, will also likely cause significant harm to Season 4's business. *See id.* ¶¶ 21–22.

Season 4's business depends on its ability to maintain the confidentiality of its communications with the lawyers that hire Season 4 for the purpose of assisting with their litigation efforts. *See id.* If all of these privileged communications were discoverable to an adversary—including an attorney's confidential communications regarding litigation strategy—attorneys will be far less likely to retain Season 4 and Season 4's ability to effectively provide its services would be undermined. *See id.* ¶ 22. The undue burden here is particularly acute, given that the information sought is not relevant to the actual claims and defenses in the litigation.

Given the above, PharmaCare's discovery efforts seem designed to simply harm Season 4 and Plaintiffs' counsel, and deter potential plaintiffs from bringing claims. Even setting aside privilege, the discovery sought is not proportional to the needs of the case and far outweighed by the lack of relevance, undue burden, and important privacy interests of Milberg's prospective clients.

F.    **Season 4 Did Not "Waive" Any Objection By Serving Its Response on the Date PharmaCare Expressly Upon.**

As a last ditch effort, Pharmacare argues that before Season 4 retained counsel, it somehow waived all objections to the Subpoena by requesting a brief extension of time to respond and then serving its Responses and Objections on the date PharmaCare expressly agreed to. *See* Motion at 6. PharmaCare's argument is without merit, and courts have rejected similar arguments. *E.g.*, *Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, 2014 WL 1783955, at *4 (M.D. La. May 5, 2014) ( "The serving

party may agree to extend the deadline to respond to a subpoena, including the deadline to serve written objections."); *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 2019 WL 3069009, at *4 (C.D. Cal. Apr. 29, 2019) (no waiver and rejecting subpoenaing party's argument that "the agreed extension was solely for the purpose of 'giving [the subpoenaed party] additional time to respond to [the subpoenaing party's] narrowed request for … documents, not for the purpose of merely filing objections"); *Rouson ex rel. Est. of Rouson v. Eicoff*, 2006 WL 2927161, at *3–4 (E.D.N.Y. Oct. 11, 2006) (no waiver where subpoenaed party failed to timely formally object to subpoena because it "reasonably believed that the extension of time to respond to the subpoena included an extension of time to object"). Here, Season 4 requested time to "put together [its] response" to the Subpoena, and PharmaCare stated in response "we agree to an extension to Monday, 2/5" without any stated qualification or condition. ECF No. 1-11. Accordingly, Season 4 reasonably believed that the extension of time included an extension of time to object. *See* Clemente Decl. ¶ 4.

The district court in *Shaw* addressed a nearly identical scenario and rejected the subpoenaing party's waiver argument. *See* 2014 WL 1783955, at *4. Just like Pharmacare, the subpoenaing party in *Shaw* "agreed to extend the deadline for [the subpoenaed party's] response' to the subpoena" beyond 14 days after the subpoena was served. *See id.* And just like PharmaCare, the subpoenaing party in *Shaw* also

argued that "the extension to respond merely extended the time specified for compliance, not the deadline to object to the subpoena." The district court in *Shaw* rejected that argument for the same reasons the Court should here: "There is nothing in the email correspondence provided that reflects that limitation." *See id.* That is particularly true here, where PharmaCare's counsel was corresponding with a non-attorney. To the extent PharmaCare's counsel intended to somehow condition its extension of time for Season 4's response, it plainly failed to do so.

In any event, even the authority PharmaCare relies upon for support (*see* Motion at 6 n.4) recognizes that courts have discretion to accept even untimely objections where "the non-party shows good cause or unusual circumstances." *Canca v. Wayfair LLC*, 2023 WL 7221148, at *3 (D.N.J. Nov. 2, 2023) (no waiver where non-party failed to serve written objections within 14 days after service because "[t]he Court affords non-parties greater protection from discovery than a party," and the non-party "had multiple conversations with Defendant's counsel regarding his objections"); *see id.* (citing *R.B. v. Hollibaugh*, 2017 WL 1196507, at *3 (M.D. Pa. Mar. 31, 2017) for the proposition that "courts may find unusual circumstances exist where non-party contacted counsel for the subpoenaing party to discuss compliance without formally submitting objections to the subpoena"). Here, PharmaCare's agreement to extend the deadline for Season 4 to respond to the Subpoena, and Season 4 serving its Responses and Objections on the date that

PharmaCare agreed upon, constitutes good cause or unusual circumstances to excuse any purported untimeliness.

### G. This Court Should Transfer The Motion To The District Court For The Southern District Of California Under Fed. R. Civ. P. 45(f)

Rule 45 expressly authorizes this Court, because it did not issue the Subpoena, to transfer a motion made under Rule 45 "to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Season 4 expressly consents to this Motion being transferred to the U.S. District Court for the Southern District of California for consideration by the presiding Judge in this case. Clemente Decl. ¶ 23. Accordingly, the Court should transfer the Motion to the issuing court pursuant to Fed. R. Civ. P. 45(f). *See Hall v. Marriott Int'l Inc.*, 2021 WL 3129598, at *2 (N.D. Cal. July 23, 2021) ("proactive consent" by non-party subject to the subpoena "provides sufficient grounds for this Court to grant her motion to transfer" under Rule 45(f); accord *In re Daimler Truck N. Am., LLC*, 2023 WL 2456069, at *2 (D. Del. Mar. 10, 2023) ("consent is sufficient to warrant transfer" under Rule 45(f)).

## V. CONCLUSION

Based on the foregoing, Season 4 respectfully requests that this Court transfer the Motion to the U.S. District Court for the Southern District of California, and that the issuing Court deny the Motion to Compel.

Respectfully submitted,

**COZEN O'CONNOR**

Dated:  April 1, 2024            By:  */s/ Matthew M. Coin*      
                           Matthew M. Coin
                           Haryle Kaldis (to be admitted *pro hac vice*)
                           1650 Market Street, Suite 2800
                           One Liberty Place
                           Philadelphia, PA 19103
                           Tel: 215-665-2000
                           mcoin@cozen.com
                           hkaldis@cozen.com

                           *Of Counsel:*
                           Thomas G. Wilkinson, Jr.
                           1650 Market Street, Suite 2800
                           One Liberty Place
                           Philadelphia, PA 19103
                           Tel: 215-665-2000
                           twilkinson@cozen.com

                           *Attorneys for Non-Party Season 4, LLC*

41

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notification of such filing ("NEF") to the counsel of record who have appeared in this case on behalf of the parties.

_/s/ Matthew Coin_
Matthew Coin